Gibson v. Gorman.

---

JOHN M. GIBSON v. PATRICK GORMAN.

1. An order appointing a receiver and allowing an ancillary injunction under the act concerning executions, made upon a judgment against a debtor who has been discharged in bankruptcy after judgment recovered, will be set aside, if the debt for which the judgment was entered was such as to be discharged by the debtor's discharge in bankruptcy.

2. Section 33 of the Bankrupt act of 1867, provides that "no debt created by the fraud or embezzlement of the bankrupt, * * * or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." *Held*—

   1. That the fraud referred to in this section is positive fraud, involving moral turpitude or intentional wrong, as distinguished from implied fraud, or fraud in law, which may exist without the imputation of bad faith or dishonesty.

   2. That the words "while acting in any fiduciary character," apply to technical trusts only, and not to such trusts as are implied from mere contracts of agency or bailment.

3. An auctioneer, on the sale of property, received a deposit from a purchaser; the sale fell through because of a defect in the title. In an action by the purchaser to recover back the deposit—*Held*, that the auctioneer did not receive the deposit while acting in a fiduciary character for the purchaser, and that the debt was discharged by the auctioneer's discharge in bankruptcy.

---

On *certiorari*.

Gorman, on September 5th, 1876, recovered a judgment in an action of *assumpsit* against Gibson. Execution was issued and returned unsatisfied, and on December 27th, 1876, a receiver was appointed pursuant to the act concerning executions. *Rev., p.* 393.

August 24th, 1878, Gibson was adjudicated a bankrupt, and on April 30th, 1880, received his discharge.

On April 30th, 1881, a new receiver was appointed in the supplementary proceedings, and on May 18th, 1881, an injunction order was made, restraining the payment to Gibson of certain moneys he had on deposit in the Provident Institution for Savings, in Jersey City.

This writ of *certiorari* was sued out by Gibson to test the legality of the order of April 30th, 1881, appointing a receiver, and the injunction order of May 18th, 1881.

The case was heard on depositions taken on notice.

Argued at February Term, 1882, before Justices DEPUE, VAN SYCKEL and PARKER.

For plaintiff in *certiorari, Flavel McGee.*

*Contra, John Garrick* and *Gilbert Collins.*

The opinion of the court was delivered by

DEPUE, J. The defendant's discharge in bankruptcy was obtained after the judgment was recovered against him. If the debt for which the judgment was recovered was of such a nature as that it was discharged by the bankruptcy, the defendant might have had relief against an execution issued on it by motion to set aside the execution. *Linn* v. *Hamilton,* 5 *Vroom* 305. Supplementary proceedings by way of discovery under the statute (*Rev., p.* 393,) are in the nature of process of execution. They are a method by which intangible property, not subject to levy, may be reached and applied in satisfaction of a judgment. The statute allows such proceedings only where the judgment is unsatisfied in whole or in part. If the judgment has been wholly satisfied by payment, or has been discharged by release or by the discharge of the debtor in bankruptcy, an order for discovery subsequently made upon it will be illegal, and the order and the ancillary injunction will be set aside. Such an application will be disposed of by

the court either in a summary manner upon depositions, or upon an issue to ascertain the facts. *Linn* v. *Hamilton, supra.*

Section 33 of the Bankrupt act of 1867, provides that " no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." *U. S. Rev. Stat.,* § 5117. The contention of the plaintiff is, that the debt for which his judgment was entered is saved, by force of this section, from the operation of the defendant's discharge in bankruptcy, on the ground that it was a debt contracted by fraud, or incurred by the defendant while acting in a fiduciary character, within the meaning of this section.

The expression, "debt created by fraud," as used in this section, has received an authoritative construction in the federal courts. It has been there adjudged that the fraud referred to in this section is positive fraud—involving moral turpitude or intentional wrong—as distinguished from implied fraud or fraud in law, which may exist without the imputation of bad faith or dishonesty. *Neal* v. *Dow,* 95 *U. S.* 704; *Wolf* v. *Stix,* 99 *Id.* 1.

The words, "while acting in any fiduciary character," in the same sentence, have never been construed in a final adjudication by the federal courts.

The bankrupt act of 1841, in the enumeration of the persons entitled to apply for the benefit of the act, excepted such as were owing debts created in consequence of a defalcation, as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity. In *Chapman* v. *Forsyth,* 2 *How.* 202, the court held that a debt due from a factor to his principal was not a fiduciary debt within the meaning of the act, and that such an indebtedness was, therefore, not excluded from the operation of the bankrupt's discharge. In delivering the opinion of the court, Mr. Justice McLean said: "If the act embraced such a debt, it will be difficult to limit its application. It must include all debts arising from agencies, and, indeed, all cases where the

law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor; and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated—' the defalcation of a public officer,' ' executor,' ' administrator,' ' guardian ' or ' trustee '—are not cases of implied but special trusts, and the ' other fiduciary capacity ' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract."

In consequence of the difference in phraseology of the two acts, it was held by Judge Blatchford and by Justice Nelson that the thirty-third section of the act of 1867 should receive a broader construction, in this respect, than the act of 1841, and should be applied to debts created while acting in any fiduciary capacity, without any special limitation. On this construction it was held that a debt due from a bankrupt, being the proceeds of sales of goods consigned to him for sale on commission, was not affected by his discharge in bankruptcy. *In re Seymour*, 1 *N. B. R.* 29; *In re Kimball*, 2 *Id.* 204, 354. These decisions have been disapproved in the Federal Circuit and District Courts by Judge Hopkins, with the concurrence of Justice Davis, in *Grover* v. *Clinton*, 8 *N. B. R.* 112; by Judge McKennan in *Keime* v. *Gray*, 5 *L. & E. R.* 489; by Chief Justice Waite in *Owlsley* v. *Cobin*, 15 *N. B. R.* 489; by Judge Choate in *In re Smith*, 18 *N. B. R.* 24; and also in the Supreme Court of Massachusetts (*Cronan* v. *Cotting*, 104 *Mass.* 245; *Woodward* v. *Towne*, 127 *Id.* 41); Alabama, (*Woolsey* v. *Cade*, 15 *N. B. R.* 238); and Mississippi, (*Green's Bank* v. *Chilton*, 10 *L. & E. R.* 700); and by the Court of Appeals of New York in *Hennequin* v. *Clews*, 77 *N. Y.* 427. In several of these cases debts due from factors arising from sales of goods consigned for sale on commission, were held not to be excepted from the operation of the dis-

charge. In Cronan *v.* Cotting the action was for the balance of the proceeds of accepted bills of exchange, delivered by plaintiff to the defendant to collect, and with the proceeds to pay a debt due to him from plaintiff, and to pay over to the plaintiff the balance; and in Woodward *v.* Towne the debt represented the proceeds of the sale of the plaintiff's lands which the defendant had received under a power of attorney made by the plaintiff, authorizing the defendant to sell and to hold the proceeds for a specified time to pay debts, if any, and then to pay over to the plaintiff. In both cases the debt was held to be barred by a discharge in bankruptcy. In Hennequin *v.* Clews the plaintiff had delivered certain railroad bonds to the defendant as collateral security for a letter of credit by the latter to the former upon a banking-house in London. The defendant wrongfully disposed of the bonds and became a bankrupt. It was held that his discharge in bankruptcy was a defence to an action for the conversion.

The cases cited, I think, establish the doctrine by the great weight of judicial decision, that section 33 of the Bankrupt act of 1867 was, in substance, a re-enactment of the provisions of the Bankrupt act of 1841 on this subject, and that it applies to technical trusts only, and not to such trusts as are implied by law from mere contracts of agency or bailment. The reasoning on which these decisions were rested was, that the Supreme Court having determined, in Chapman *v.* Forsyth, that these general words, as used in the act of 1841, meant only technical trusts of the character of those in the preceding enumeration, it was deemed unnecessary to retain the latter in the act of 1867, and the hardship, if not injustice, which would result from giving to the corresponding language in the act of 1867 a broader signification.

The depositions in this case show that Gibson was an auctioneer. As such, he had in charge for sale certain lots of land belonging to one James Ford, and also certain other lots belonging to Mrs. Eliza Hunter. June 2d, 1875, Gorman became the purchaser of lots Nos. 67 and 69 Van Vorst street, of the Ford property, for the price of $5500. He paid

$550—ten per cent. of the purchase money—to Gibson, and took from him a receipt, expressing that an indisputable title should be given. The deed was to be delivered on August 2d, 1875, and was demanded on that day. It appears that a good title could not then be given, the property being under foreclosure. Title was obtained and a deed tendered in December, 1875. Gorman refused then to accept the deed. He had given notice of his intention to rescind the purchase, and demanded back the deposit on August 6th, 1875, and soon after began his suit.

Gibson testified that he deposited the $550 in his bank, and did not return the deposit, because he had hopes that good title would be made. He said he sold the property supposing the owner could make good title, and disbursed about $100 for advertisements and other expenses.

Gorman, on July 17th, 1875, also purchased through Gibson two houses and lots of the Hunter property for $18,000. He paid $1000 on account of the purchase money, and took a receipt for it in the name of Gibson, as agent for Mrs. Hunter. The money was received, and the receipt, in fact, signed by Mr. Hyams, the agent of Gibson. Of the $1000, Gibson paid $640 to Mrs. Hunter, and retained the balance of $360 as his commissions. Mrs. Hunter refused to allow the commissions, on the ground that $18,000 was the net price, and Gorman paid over the $360 and got his deed.

Gibson claimed the $360 for his commissions. The judgment against him is record proof that his claim was without foundation, but does not show that it was dishonestly made. So much of the business had been transacted by Hyams, his agent, that he might have retained the money for his commissions without the imputation of a dishonest purpose.

For the two sums of money mentioned, the judgment in question was recovered.

We think that neither of these sums was received by Gibson while acting in a fiduciary character for Gorman, within the meaning of the bankrupt law, and that the evidence is not sufficient to show that either debt was created by fraud.

The judgment was barred by the defendant's discharge in bankruptcy, and the order appointing a receiver, made after the discharge, and the ancillary order of injunction, should be set aside, but without costs.