MOSES E. REEVES

*v.*

JOHN H. MCCRACKEN et al.

[Filed March 18th, 1905.]

1. The Bankrupt act of 1898 provides that "a discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as * * * were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."—*Held*, (1) that the words "fiduciary capacity" having reference only to tech-

nical trusts, a debt arising out of an implied understanding, had on a conveyance in the ordinary form of an absolute deed, from R. to M., of certain parts of R.'s real estate, no trust being expressly declared, was not excepted from the operation of a discharge; (2) that the fair inference from the facts stated was that the conveyance was intended to hinder and delay creditors, and that the grantee therein did not, for that reason also, hold in a fiduciary capacity within the meaning of the act.

2. R. executed to M. a chattel mortgage to secure certain notes of a firm of which he was a member. These notes were fully paid. The allegation of the bill was that M. claimed to hold the mortgage by assignment for a debt due from R. to him.—*Held,* that the defence being of a character plain and palpable, and within the command of the party at any time, in the absence of any allegation that there was any agreement that the mortgage should stand as security for money due from R. personally to M., a case for the affirmative remedy of cancellation had not been made out.

3. A debtor may, in a case situated like the present, plead his discharge in bankruptcy after answer filed, such plea being in the nature of a plea *puis darrein continuance.*

*Mr. Frank E. Bradner,* for the complainant.

*Mr. Conover English* and *Mr. Robert H. McCarter,* for the defendants.

STEVENS, V. C.

This bill is filed against John H. McCracken and his wife, Selena A. McCracken, mainly for an account. There are three other defendants, but it is admitted that they are *bona fide* purchasers for value and that no decree can be made against them.

Briefly summarized, the bill states:

1. That complainant conveyed to John H. McCracken 157, 157½ and 159 Boyd street, 223 Belmont avenue, 67 and 69 Astor street, and 580 Clinton avenue, and that this conveyance was subsequently fortified by a conveyance by the sheriff. These properties have since been sold, either by McCracken or by the sheriff, so that McCracken no longer has title to any of them: The relief asked in respect of them is an account of the proceeds of sale and an account of the rents.

2. That there were sold by the sheriff to John H. McCracken other lands of the complainant, viz., a vacant lot on Chestnut street and some lots on Peshine avenue. These lands, too, have

been sold by McCracken, and the same relief is asked in respect of them.

3. That there were sold by the sheriff, under judgments obtained against complainant, to Selena A. McCracken, the following lots which belonged to complainant, viz., 102 and 102½ Pennington street, 305, 307, 309 Ferry street, and some lots on Peshine avenue. The lots on Peshine avenue have been sold by Mrs. McCracken. The other lots are still held by her. The relief asked in respect of these is an account of the property as far as sold, an account of the rents and a declaration that Mrs. McCracken holds what remains unsold in trust for complainant.

4. That complainant executed a chattel mortgage to John H. McCracken; that it has been paid, and that McCracken refuses to cancel or surrender it.

5. That there exist two judgments against complainant which were assigned to John H. McCracken, and which McCracken still holds. The bill prays that McCracken may be required to assign them to complainant.

Mr. and Mrs. McCracken answered separately, but pending suit Mr. McCracken became bankrupt, and leave was given to him to plead his discharge. He has done so, and the question now before the court respects the sufficiency of the plea. It is contended by plaintiff that McCracken occupied the position of trustee, and that trustees are excepted from the operation of a discharge under the Bankrupt act. It is contended by McCracken that, not being a trustee of an express or technical trust, the plea is, under that act, a bar.

The act of 1898 provides as follows (§ *17*) :

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as   *   *   *   (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."

*Chapman* v. *Forsyth,* *2 How. 202,* is the leading case on this subject. It was there held that by the words "fiduciary capacity" were intended technical trusts and not those which the law implies from contract. A cotton factor had sold his principal's cotton, and had failed to account for the proceeds. The judg-.

ment was that he had not acted in a fiduciary capacity within the meaning of the act. In *Hennequin* v. *Clews, 111 U. S. 676*, a case arising under the act of 1867, it was likewise so held in the case of one who, to secure a debt due from himself, had hypothecated securities which had been pledged to him to secure the obligations of another. In *Palmer* v. *Hussey, 119 U. S. 96*, it appeared that bonds had been placed in the hands of one H., who had bound himself by writing to hold them subject to the order of P. and to allow him (P.) two per cent. interest thereon. H. having thereafter fraudulently sold them, it was decided that they had not been held in a fiduciary capacity. In *Noble* v. *Hammond, 129 U. S. 65*, the case was that A had asked B to collect money for him, without compensation, and to keep it until called for. B collected the money and without fraudulent intent deposited the proceeds to his own credit with his own funds, and subsequently became bankrupt. Here, too, it was decided that B was not acting in a fiduciary capacity. In *Upshur* v. *Briscoe, 138 U. S. 365*, by the paper which, it was alleged, evidenced the trust, B agreed (*inter alia*) to pay interest on a fund of $10,000 to A during her life, and at her death to pay it to her legal issue. It was held, nevertheless, that B was not a technical trustee within the meaning of the act; that he did not sustain a fiduciary relation to the money, because he had the right, for the time being, to use the principal in any way that he thought proper. In *Crawford* v. *Burke, 195 U. S. 176*, a case under the act of 1898, it was held that a commission merchant and factor who sold for others and withheld the money received was not indebted in a fiduciary capacity within the meaning of that act. The court accorded to the words "fiduciary capacity" the same limited signification that had been given to them under the prior acts of 1841 and 1867. It declared that they were further limited by the words "fraud," "misappropriation," &c., which extended to them as well as to the word "officer."

In *Gibson* v. *Gorman, 44 N. J. Law (15 Vr.) 325*, Justice Depue reviewed the cases and said that the words "fiduciary character" in the act of 1867 referred to technical trusts only, and not to such trusts as are implied by law from mere contracts of agency or bailment. He refers with approval to a case in

Massachusetts (*Woodward* v. *Towne,* 127 *Mass.* 41) which bears strongly upon the case in hand. There the plaintiff had executed to defendant a power of attorney to sell land. Defendant sold the land and, contrary to his duty, lent the proceeds to one who failed to pay and who died insolvent. It was held by Chief-Justice Gray that defendant was not a technical trustee under the act of 1867.

It would be superfluous to refer to the other numerous and conflicting cases on this subject, for those above referred to are controlling. Tested by them, the plea must be held to be good. The allegations of the bill are lacking in precision and somewhat involved, and this must militate against complainant. Taken altogether, they do not disclose a technical trust. What they do show is this: That the complainant was, on January 3d, 1896, threatened with the entry of two judgments against him; that he sought advice from Mr. McCracken, who had on different occasions acted as his legal adviser; that McCracken told him that his "creditors would not make any valid objection" to the conveyance, and "that he would make arrangements for an extension of time" to pay the claims against complainant, and would raise money to pay them; that he then conveyed to him a considerable portion of his real estate, the conveyance being, as far as appears, in the ordinary form, and the consideration stated, $3,500; that complainant at the same time executed a due bill to McCracken whereby he acknowledged himself indebted to complainant in the sum of $3,497, although, so the allegation is, "said McCracken did not pay any consideration," and complainant was not indebted to him "in any sum of money whatsoever;" that on the same day (January 3d, 1896) McCracken leased the homestead property (part of that conveyed) to Reeves, "because," as it is alleged, "it would look better for him to hold a lease which he could show to your orator's creditors;" that while this lease, in terms, provided that Reeves should pay rent, the verbal agreement was that he should not. It is further alleged that a judgment for $2,175.05 was actually entered on the day following the conveyance.

The bill is as noteworthy for what it fails to state as for what it states. So far as the land conveyed on January 23d is con-

cerned, it fails to state any express trust, either written or verbal, contemporaneous or subsequent. What McCracken was to do with the property conveyed to him is left to conjecture. In the absence of other facts giving rise to some other inference, it must be inferred, from the facts stated, that the object of the conveyance was to hinder and delay creditors. It is impossible to contend that such a conveyance was a technical trust. It may be conjectured that the complainant had such confidence in McCracken that he was willing to give him the legal title to his property, in the expectation that he would make an advantageous bargain with his creditors and return to him what remained of it or of its proceeds. But this confidence was not a technical trust. The statute declares that, except in the case of trusts resulting by implication of law (which this was not), all declarations and creations of· trust in land shall be manifested and proved by some writing, signed by the party enabled by law to declare it. Here there was no such declaration of trust. Not only so, but if I have made the proper inference as to the purpose of the parties, the implied understanding would, if it had been reduced to writing, have been illegal. A device to hinder creditors could not be deemed a technical trust, within the meaning of the act. It is plain, therefore, that in any aspect of the matter, the transfer and any liability consequent thereon does not come within the exception to the discharge in bankruptcy.

In addition to the lands conveyed, certain other lands were sold by the sheriff under executions and bought in by McCracken. I do not find in the bill any allegation of any express trust in reference to these lands. If there was any it was not declared in writing. Any claim in respect of them does not, therefore, come within the exception to the discharge.

The third ground of complaint relates to the conveyances to Mrs. McCracken. As the plea does not extend to her, I need not consider it.

An account is also asked in respect of the rents collected. So far as these rents came from the properties already referred to, they are subject to the considerations already mentioned. But the bill alleges that shortly after the judgment sale had taken place McCracken went to complainant and represented that it

would be to his advantage to permit him (McCracken) to collect the rents of all his property, and that he consented to his doing so by reason of McCracken's statement that his creditors could cause him a great deal of trouble unless he (McCracken) "should have possession of all the properties and should actually receive the rents." Here it is plain that, apart from the objection that this was merely a continuation of the scheme to hinder creditors, McCracken was acting merely as an agent, as to whom the foregoing cases show that the discharge in bankruptcy was a perfect bar.

The next allegation is, in substance, that complainant executed a chattel mortgage to McCracken; that this mortgage has been paid, and that McCracken refuses to cancel and deliver it, claiming that he has the right to hold it to secure the payment of other pretended obligations. There is a prayer that McCracken may be ordered to cancel and surrender it. I do not find anything in the Bankrupt act which would, in express terms, relieve the defendant from the obligation to do so. But if there be any right or claim under the mortgage, it passed to the trustee in bankruptcy and could not be asserted by the bankrupt himself. The court could not now decree a cancellation without bringing in such trustee. Moreover, the law on this subject is thus stated in *Chase* v. *Chase, 50 N. J. Eq. (5 Dick.)* *143, 146:* "Where the defence is of a character plain and palpable, and within the command of the party at any time, this court ought not to encourage a resort to an expensive litigation in a court of equity. In all cases the court must exercise a sound discretion and be regulated in its action by the propriety of the particular case before it." Here, as far as the allegations go, it would seem that the defence would be plain and palpable if made at any time. The mortgage on its face purports to have been given to secure promissory notes of the firm of M. E. Reeves & Son. This being so, in the absence of any allegation that there was an agreement that the mortgage should stand as security for moneys due McCracken, it is difficult to understand how McCracken's contention could at any time wear even the semblance of plausibility. Besides, the mortgage would be foreclosed in this court, where every ground of defence could be

urged. It would seem that, even if the relief of cancellation could now be given as against McCracken, sound discretion would require the court to refuse it on the state of facts disclosed by the bill.

I think I must regard the allegations in reference to this mortgage merely as part of a statement, on which complainant bases his right to an account, and I must hold that the plea is a bar to all the relief that was, before the discharge in bankruptcy, properly demandable on that statement.

An objection is taken to the course of practice pursued in this case. It is said, on the authority of *Lowry* v. *Morrison, 11 Paige 327,* that the defendant should have applied for a stay of proceedings and for an order that complainant file a supplemental bill, and so bring in the trustee in bankruptcy. In the case before me the defendant first filed an answer and subsequently applied for leave to plead his discharge. This course of procedure is recognized in *Crawford* v. *Burke, 195 U. S. 176,* already cited. It would seem that the objection, if valid, should have been taken when the order for leave to plead was applied for. But the objection is untenable on another ground. This is not, as was the case of *Lowry* v. *Morrison,* an effort to follow specific property, upon which the plaintiff had a lien. As I have already stated, McCracken disposed of all the property to which he had taken title before the bill was filed, and the suit was, as to him, simply for an account and for a money decree. There is nothing to indicate that property of any description passed to the trustee burdened with a specific lien or affected with a trust in his favor. The complainant had the same right to prove his demand before the trustee, and, if allowed, to share in the distribution, that any other creditor had.