JOSEPH DAMATO, PLAINTIFF, v. NICHOLAS J. AMBROSE, DEFENDANT.

Argued November 5, 1938—Briefs Submitted December 1, 1938. Decided May 11, 1939.

540

Before Justice HEHER, at the Passaic Circuit.

For the rule, *Abraham I. Feltman.*

*Contra, Louis E. Mainardi (Isadore B. Miller,* of counsel).

HEHER, J. On February 27th, 1932, plaintiff recovered a money judgment against defendant. On April 27th, 1938, pursuant to an order duly entered, a writ of execution issued against defendant's salary and income under *R. S.* 1937, 2 :26-182 *et seq.,* and is still outstanding. On May 16th, 1938, the judgment debtor was adjudged a bankrupt in the United States District Court for the District of New Jersey. The judgment debt was duly scheduled; and, on the ensuing June 1st, an order was entered in the bankruptcy proceedings

directing, as I understand it (the order has not been introduced into evidence), that the employer "retain" and "hold" the prescribed deductions pending determination of the judgment debtor's right to a discharge. On September 12th, 1938, a decree of discharge was entered; and defendant now maintains that it is embrace of the judgment debt, and that therefore the execution of the judgment should be perpetually restrained and the "money accumulated" by the employer under the execution paid to him.

On the other hand, plaintiff contends that, while his judgment was a provable debt, the underlying liability falls within the category of a non-dischargeable debt, as defined by section 17 of the Bankruptcy act, as amended by the Chandler act of 1938 (chapter 575, section 17, 52 *U. S. Stat. at L.* 851), in that it arose from a "willful and malicious" injury to his "property," and was also a "misappropriation or defalcation while acting * * * in" a "fiduciary capacity." *U. S. C. A.,* § 35. I do not entertain this view.

Although the complaint charged, in four counts, that plaintiff "engaged" defendant "as an agent or broker to obtain a workmen's compensation insurance policy," and paid to him the fixed premium therefor, and that the policy was later canceled by the insurer "because of the defendant's fraudulent, negligent and improper conduct," in that he "failed to deliver" to the insurer the premium so paid, but "converted" the same "to his own use," and that defendant "negligently, improperly, illegally, recklessly, and willfully, failed" to perform a promise subsequently made "to turn the said money over to" the insurer, and "to obtain a re-instatement of the said policy, or to obtain a new policy in another company, the defendant well knowing that the plaintiff relied upon" his "promise and upon" his "representation of possessing the customary care and skill necessary for conducting the business of an insurance agent or broker," but "fraudulently and willfully misrepresented to the plaintiff," after the cancellation of the policy, "that he had obtained" its "re-instatement," and that plaintiff suffered injury by reason of compensable disability sustained by one of his employes after the cancella-

tion of the policy, and within the original term thereof, it is established that the sole issue submitted to the jury, apparently with the consent of both parties (there was no exception to the charge), was whether defendant, in the circumstances adduced in evidence, had been guilty of "negligence" in the transaction made the subject-matter of the complaint. The trial judge ruled that the evidence did not disclose "a case of fraud in the legal sense."

Assuming without deciding that the judgment is not *res judicata* of the nature of plaintiff's cause of action as one for mere negligence, in that neither fraud nor conversion was an essential element of the judgment, his affidavit submitted on this motion sets forth, in substance, that he engaged defendant to procure an insurance policy of the character mentioned (he had confidence in defendant since he had "always" handled his indemnity insurance business), and, at defendant's request, "gave him" his "check in the sum of $75 as full payment on the said insurance policy for one full year;" that defendant procured the stipulated insurance policy from the Bankers Indemnity Insurance Company; that "several months later" plaintiff "received a cancellation notice" from the insurer advising that the policy "was going to be canceled" on a day specified for non-payment of the premium; that, upon inquiry, defendant stated there had been "an apparent error made by his secretary," and that the policy "would not be canceled" by the insurer, "because he would take care of the same and see to it that the policy would still be in effect since the full premium due had been paid thereon;" that he relied upon these "representations because" of his "great confidence" in defendant's "integrity and ability," but that the policy was in fact canceled, in accordance with the notice, prior to the happening of the compensable injury to his employe for which he was required to render compensation; that defendant "converted the moneys" thus "given to him to his own use;" that, in the circumstances, "there was a fiduciary relationship existing between" them "by reason of" plaintiff's "prior business with" defendant "and of the confidence" he "placed in his ability and honesty;" and that the

"debt is one that arises out of a willful and malicious conversion as well as fraud in the acceptance of the money by the defendant with intent to use the same for himself and also by reason of the" asserted "fiduciary relationship" between them, "upon which" plaintiff "relied," and the judgment is therefore of a class not dischargeable in bankruptcy.

From the early days of the Federal Bankruptcy law, the bankrupt's discharge has been given a broad and liberal construction. Exceptions to its operation have been confined to those "plainly expressed;" and the burden is cast upon one asserting the status of a creditor to show that, "because of the nature of the claim, failure to give notice, or other statutory reason, the debt sued on was by law excepted from the operation of the discharge." *Kreitlein* v. *Ferger,* 238 *U. S.* 21; 35 *S. Ct.* 685; 59 *L. Ed.* 1184; *Gleason* v. *Thaw,* 236 *U. S.* 558; 35 *S. Ct.* 287; 59 *L. Ed.* 717; *City Hall Building and Loan Association* v. *Star Corp.,* 110 *N. J. L.* 570.

Here, the underlying cause of action did not arise from a "willful and malicious" injury to plaintiff's "property" in the statutory sense; nor did the action proceed to judgment on that theory. As stated, the judgment was founded upon defendant's mere negligence, without malice; and there is no extraneous proof of an injury within the statutory category. The cause of action thus reduced to judgment, and now sought to be enforced, was not for the conversion of the premium paid, but for defendant's negligence in the performance of a contractual undertaking to provide such indemnity insurance for the agreed period, more particularly his promise to supply such insurance after the cancellation of the issued policy. The liabilities excepted under this head from the operation of a discharge in bankruptcy relate generally to such as emanate from torts to the person or property, and not to those that are ordinarily grounded in a breach of contract.

This particular clause is coupled under the same subdivision number with one excepting from a discharge liabilities for "obtaining property by false pretenses or false representations," and the rule *noscitur a sociis* is applicable in the delineation of the legislative intent. The provision takes its

meaning from the associated words. In *Gleason* v. *Thaw, supra,* the Federal Supreme Court said of this clause: "Congress, we think, never intended that property in the paragraph under consideration should include professional services. At most it denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business, and the same signficance attaches to it in many carefully prepared writings." See, also, for the application of the above rule of interpretation, *Neal* v. *Scruggs,* 95 *U. S.* 704; 24 *L. Ed.* 586.

And, while conversion constitutes "injury" to property within the signification of the statute, there must be willfulness and malice to take it out of the operation of the discharge; these are indispensable requisites. *McIntyre* v. *Kavanaugh,* 242 *U. S.* 138; 37 *S. Ct.* 38; 61 *L. Ed.* 205; *Davis* v. *Aetna Acceptance Co.,* 293 *U. S.* 328; 55 *S. Ct.* 151; 79 *L. Ed.* 393; *Brown* v. *Garey,* 267 *N. Y.* 167; 196 *N. E. Rep.* 12; 98 *A. L. R.* 1449; *In re Levitan,* 224 *Fed. Rep.* 241. Something more than mere negligence is required; the lack of care that is so denominated does not connote willfulness or malice within the purview of the statute. *Davis* v. *Aetna Acceptance Co., supra; Tinker* v. *Colwell,* 193 *U. S.* 473; 24 *S. Ct.* 505; 48 *L. Ed.* 754; *Re Greene,* 87 *Fed. Rep.* (*2d*) 951; 109 *A. L. R.* 1188; *In re Wegner,* 88 *Fed. Rep.* (*2d*) 899; *Brown* v. *Garey, supra.* See, also, 57 *A. L. R.* 153.

Nor is the basic liability classable as a "misappropriation or defalcation" by defendant "while acting in" a "fiduciary capacity."

In its essence, the obligation reduced to judgment, as revealed by the proofs submitted on this motion, arose from plaintiff's reliance, to his injury, upon defendant's promissory "representations" that he would "see to it" that the policy "would not be cancelled" by the insurer, *i. e.,* a breach of a contractual duty. In an early case, *Chapman* v. *Forsyth,*

2 *How.* 202; 11 *L. Ed.* 236, the Federal Supreme Court, in ruling that a factor who receives the money of his principal was not a fiduciary within the intendment of a like provision of the Bankruptcy act, declared: "If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied, but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act." And in the recent case of *Davis* v. *Aetna Acceptance Co., supra,* the same court, in an opinion by Mr. Justice Cardozo, reiterated this interpretation, with the observation that the "precept" thus laid down "has been applied by this court in varied situations with unbroken continuity." See, also, *Noble* v. *Hammond,* 129 *U. S.* 65; 9 *S. Ct.* 235; 32 *L. Ed.* 621; *Crawford* v. *Burke,* 195 *U. S.* 176; 25 *S. Ct.* 9; 49 *L. Ed.* 147; *Tindle* v. *Birkett,* 205 *U. S.* 183; 27 *S. Ct.* 493; 51 *L. Ed.* 762; *In re Harber,* 9 *Fed. Rep.* (*2d*) 551; *Smith & Wallace Co.* v. *Lambert,* 69 *N. J. L.* 487; *In re Benoit,* 194 *N. Y.* 548; 87 *N. E. Rep.* 1115.

The rule to show cause is accordingly made absolute, but without costs.