39 N.J. Super. 61 (1956)
120 A.2d 490
FRED SHAPIRO AND SAM SOLOMON, TRADING AS HOLMAN POULTRY CO., PLAINTIFFS-RESPONDENTS,
v.
JOSEPH MARZIGLIANO AND RALPH MARZIGLIANO, DEFENDANTS-APPELLANTS. S & P LIVE POULTRY CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JOSEPH MARZIGLIANO AND RALPH MARZIGLIANO, DEFENDANTS-APPELLANTS. FRED SHAPIRO & CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JOSEPH MARZIGLIANO AND RALPH MARZIGLIANO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1956.
Decided February 10, 1956.
*62 Before Judges GOLDMANN, FREUND and CONFORD.
*63 Mr. Samuel Milberg argued the cause for the defendant-appellants (Messrs. Milberg & Milberg, attorneys; Mr. Henry Milberg on the brief).
Mr. Phil O. Mayer argued the cause for the plaintiffs-respondents (Messrs. Mayer & Mayer, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The principal question here is whether the liability of a consignee arising from the failure to pay to the consignor the proceeds of sale is barred from discharge under section 17(a)(2) of the Federal Bankruptcy Act, 11 U.S.C.A., sec. 35, subd. (a)(2), as a willful and malicious injury to the property of the consignor. A subsidiary question argued by the parties is whether the transactions were actually consignments, as the respondents claim, or such in form only, being in reality sales on book account, as the appellants urge.
The defendants appeal from three judgments entered in favor of the plaintiffs in three separate actions, tried concurrently before the court without a jury and consolidated for argument as one appeal because they involve identical issues of law and fact. There is no dispute as to any material fact; the controversy at the trial and on this appeal pertains to the construction of the agreements between the parties and whether, under the conceded facts, the liability of the defendants was discharged in bankruptcy.
The plaintiffs, wholesale poultry dealers, brought these suits against the defendants, retailers, to recover the unpaid balances for deliveries of poultry. The parties had done business with one another for a number of years. The defendants would call at the plaintiffs' place of business for poultry, and on each delivery would sign a receipt, at the bottom of which was printed an agreement termed "Consigned." It provided that title was to remain in the consignor, and that the defendants would within seven days either pay for or return the poultry on demand. The goods were not to be sold below the price mentioned in the receipt, the consignee *64 to retain any overage. The defendants also assumed additional liabilities. With respect to these, there is a variance between a form of receipt printed as an exhibit and a purported copy thereof quoted in the brief. This may be accounted for by the fact that there were several plaintiffs, and numerous receipts offered in evidence, but only one was printed in the record. However, in legal effect there is no substantial difference. The exhibit purporting to be the consignment agreement contains the following wording: "Consignee assumes liability for dead poultry, or deterioration in value of poultry and all charges for maintenance of poultry." In the statement of facts, the following appears as a quotation from a receipt: "Consignee assumes liability for loss of poultry, for depreciation, deterioration and for all charges for maintenance of said poultry."
The complaint in the first suit was framed in assumpsit for breach of contract. The other two allege the contracts and charge willful and malicious conversion by the defendants of the proceeds of sale. In their answers the defendants admitted the deliveries and their indebtedness, but contended that the sales were unconditional and not on consignment. The pretrial order recites that the actions were in tort, based upon the alleged conversions, which the defendants denied, asserting that the merchandise was sold on book account.
At the commencement of the trial, the defendants stated that pending the litigation they had filed a petition in bankruptcy in the United States District Court for the District of New Jersey, that the plaintiffs were listed as creditors in the schedules and were notified, and that they, the defendants, had been duly discharged in bankruptcy of all provable debts and claims. The defendants were permitted to supplement the answers and the pretrial order to assert this affirmative defense. Thereupon, the issues litigated were whether the transactions were consignments or sales, and whether the bankruptcy discharged the defendants of their liability to the plaintiffs.
The defendants contended that the debts were contractual and did not arise from tort; that they used the proceeds of *65 sale to pay other creditors and other expenses in the ordinary course of business; and that if there had been a conversion, it was not willful and malicious. The trial judge, holding that the transactions were "consignments" and the conversion willful and malicious, entered judgments for the plaintiffs; wherefore these appeals.
The label which the parties give to a transaction does not determine its character. Terminology may be merely a subterfuge and courts will not permit the parties to cloak or disguise the real character of a transaction by designating it as a consignment. They will look beyond mere labels and examine the contract as a whole in order to ascertain the intention of the parties. Lauter Co. v. Isenreath, 77 N.J.L. 323 (Sup. Ct. 1909); Wood v. Cox, 92 N.J. Eq. 307 (Ch. 1921); Riedinger v. Mack Machine Co., &c., Inc., 117 N.J. Eq. 334 (Ch. 1934); 77 C.J.S., Sales, § 270 et seq., p. 1072; 46 Am. Jur., Sales, § 16, p. 209 et seq.; 2 Williston on Sales (rev. ed.), § 336, p. 296; Corbin, Legal Analysis and Terminology, 29 Yale Law J. 163 (1919).
In determining whether in a particular instance the relation of the parties to goods delivered is that of seller and buyer, or that of consignor and consignee, the court does not make a new contract for the parties, but construes their intention from the contract as a whole. Edgewood Shoe Factories, &c., v. Stewart, 107 F.2d 123 (5 Cir. 1939); see also Washington Construction Co., Inc., v. Spinella, 13 N.J. Super. 139 (App. Div. 1951), affirmed 8 N.J. 212 (1951).
Unlike the ordinary contract of consignment wherein the consignee assumes the risks ensuing from his own neglect in the maintenance of the merchandise, in the instant case the defendants assumed liability for losses occurring even if they exercised care and from natural causes inherent in the product. Thus, for "loss of poultry, for depreciation, deterioration * * *," as stated in the brief, or "for dead poultry, or deterioration in value of the poultry * * *," as in the exhibit. Such losses are normally borne by the owner of the merchandise and not by the consignee or bailee. While the common-law liability of a bailee may be enlarged by contract *66 without destroying the character of the relation, Riedinger v. Mack Machine Co., &c., Inc., supra, the enlargements in this case are strongly suggestive of an intention that such a transaction be a sale.
However, in view of the conclusion we have reached, it is immaterial whether the transactions be regarded as consignments, as the trial court found, or ordinary sales, as we are inclined to construe them in view of the course of conduct of the parties over the years.
Section 17(a)(2) of the Federal Bankruptcy Act, 11 U.S.C.A., sec. 35, provides "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as * * * (2) are liabilities * * * for willful and malicious injuries to the person or property of another * * *." A "`provable claim' * * * is synonymous with `dischargeable debt.'" United States ex rel. Weber v. Meyering, 66 F.2d 347, 349 (7 Cir. 1933).
Section 17(a)(4) excludes debts created by misappropriation while acting in a fiduciary capacity. The respondents do not invoke this exception, and in this respect they are eminently correct as it has repeatedly been held that a consignee or factor does not act in a fiduciary capacity as the term is used in the Act; it applies only to technical trusts, such as arise from the relationship of attorney, executor or guardian. Hennequin v. Clews, 111 U.S. 676, 4 S.Ct. 576, 28 L.Ed. 565 (1884).
In Damato v. Ambrose, 122 N.J.L. 539, 543 (Sup. Ct. 1939), the Supreme Court said:
"From the early days of the Federal Bankruptcy law, the bankrupt's discharge has been given a broad and liberal construction. Exceptions to its operation have been confined to those `plainly expressed'; and the burden is cast upon one asserting the status of a creditor to show that, `because of the nature of the claim, failure to give notice, or other statutory reason, the debt sued on was by law excepted from the operation of the discharge.'"
See also Wegiel v. Hogan, 28 N.J. Super. 144 (App. Div. 1953).
*67 Assuming, arguendo, that the transactions were consignments, that the defendants sold the poultry and used the proceeds for purposes other than the discharge of their liability to the plaintiffs, would this constitute "willful and malicious injury to the person or property" of the plaintiffs within the meaning of section 17(a)(2)? The settled rule is that it would not. The "willful and malicious injury" as used in the Bankruptcy Act arises from a willful act, done intentionally without just cause or excuse. Peters v. United States ex rel. Kelley, 177 F. 885, 101 C.C.A. 99 (7 Cir. 1910); certiorari denied, 217 U.S. 606, 30 S.Ct. 696, 54 L.Ed. 900 (1910); McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); Collier's Bankruptcy Manual (2d ed., 1954), § 17.03. Not every conversion constitutes willful and malicious injury. "A merely technical conversion cannot be brought within the exception. There must be something wanton or almost larcenous about the appropriation." Remington on Bankruptcy (6th ed.), § 331.1. In mercantile transactions where the consignee, bailee or factor in the ordinary course of business neglected to pay to the consignor or bailor, the proceeds of sale, courts have held that it was contrary to public policy to except them from the benefits of the Bankruptcy Act. Haggerty v. Badkin, 72 N.J. Eq. 473 (Ch. 1907); Gibson v. Gorman, 44 N.J.L. 325 (Sup. Ct. 1882); Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1943); Royal Indemnity Co. v. Sherman, 124 Cal. App.2d 512, 269 P.2d 123, 42 A.L.R.2d 890 (D.C. App. 1954); Noble v. Hammond, 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621 (1889).
The case of Davis v. Aetna Acceptance Co., supra, discusses distinctions between liabilities from conversions which are willful and non-dischargeable, and those which are technical and dischargeable. There, a dealer in automobiles obtained a loan from a finance company for the acquisition of an automobile, executing a chattel mortgage and an agreement not to sell without the consent of the finance company. He sold, without obtaining consent, and failed to pay over to the company the proceeds of the sale. Mr. Justice Cardozo held *68 the liability dischargeable, saying [293 U.S. 328, 55 S.Ct. 153]:
"There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. Such a case was McIntyre v. Kavanaugh * * * where the wrong was unexcused and wanton. But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. * * * There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one. Turning to the findings here, we see that willfulness and malice have been unmistakably excluded. * * * The discharge will prevail as against a showing of conversion without aggravated features."
Long before Davis v. Aetna Acceptance Co., supra, our Supreme Court, in 1882, in Gibson v. Gorman, supra, considered the subject and followed the jurisdictions adopting the rule that debts due from factors arising from sales of goods consigned for sale on commission were not excepted from the operation of the discharge in bankruptcy.
In Ferdinand v. Cooke, 115 A. 439 (not officially reported) (Sup. Ct. 1921), the Supreme Court sustained the discharge of a bankrupt who had converted machinery on the ground that it was not a willful and malicious injury to the property of another. See also Reeves v. McCracken, 69 N.J. Eq. 203 (Ch. 1905), affirmed 73 N.J. Eq. 729 (E. & A. 1908).
In Damato v. Ambrose, supra, an insurance broker converted to his own use a premium paid to him. The plaintiff sued and recovered a judgment for negligence. Subsequently, the defendant filed a petition in bankruptcy and the question was whether the debt was dischargeable. Mr. Justice Heher said, 122 N.J.L., at page 543:
"Here, the underlying cause of action did not arise from a `willful and malicious' injury to plaintiff's `property' in the statutory sense; nor did the action proceed to judgment on that theory. * * * The liabilities excepted under this head from the operation of a discharge in bankruptcy relate generally to such as emanate from torts to the person or property, and not to those that are ordinarily *69 grounded in a breach of contract. * * * And, while conversion constitutes `injury' to property within the signification of the statute, there must be willfulness and malice to take it out of the operation of the discharge; these are indispensable requisites."
In Rees v. Jensen, 170 F.2d 348, 350 (9 Cir. 1948), it was stated:
"It is clear that merely because a conversion is intentional it is not ex proprio vigore to be classified as willful and malicious within the meaning of the pertinent section of the Bankruptcy Act. There must also be a showing of the tort with aggravating features, which will warrant a deduction that the conversion in question transcends ordinary wrongdoing into a situation evincing a reckless disregard of the personal or property rights of others, and a willingness by the tort-feasor to inflict the injury complained of in the specific case."
The evidence in the present case is that it was the frequent practice of the plaintiffs to carry the defendants' accounts for varying periods of time after expiration of the seven-day contractual period for payment and for the plaintiffs to deliver more merchandise to the defendants notwithstanding there were unpaid bills on prior deliveries. Some of the accounts for which recovery was allowed were three or four years old. Clearly, the plaintiffs were dealing with the defendants on a credit basis. We conclude that the defendants' final default was a typical commercial bankruptcy and thus within the spirit, as well as the letter, of the discharge provisions of the Bankruptcy Act. Royal Indemnity Co. v. Sherman, supra.
Accordingly, the judgments are reversed.