## NOBLE *v.* HAMMOND.

ERROR TO THE SUPREME COURT OF THE STATE OF VERMONT.

No. 101. Argued December 3, 1888.—Decided January 14, 1889.

A for his own accommodation asked B to collect money for him, without compensation, and to keep it until A called for it. B collected the money, and, without actual fraud or fraudulent intent, deposited the proceeds to his own credit with his own funds. By an unexpected revulsion he was forced into bankruptcy before he had paid it over, and made a composition with his creditors : *Held,* that the debt thus incurred by B to A was not a debt·created by fraud or embezzlement of the bankrupt, or while he was acting in a fiduciary capacity· within the exception provided for in Rev. Stat. § 5117.

The word " fraud" as used in Rev. Stat. § 5117 means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not merely implied fraud, or fraud in law.

THE court stated the case as follows:

This is an action of general assumpsit originally brought in the county court of Franklin County, Vermont, by the late firm of Hammond & Burt, of which the defendant in ,error, DeForest Hammond, is the survivor, against the plaintiff in error, Sylvester C. Noble, to recover the sum of $1000 in money alleged to have been received by him of and from them. The defendant pleaded the general issue, and also gave notice under the statute, as a special. defence, of his discharge by .composition in bankruptcy, as provided for by the United States statutes. The case was tried by a jury, resulting in a verdict in favor of plaintiffs for $1149.83, for which, with costs, judgment was rendered. The Supreme Court of the

State affirmed this judgment, and the defendant thereupon sued out the writ of error which brings the case here.

The material facts in the case are as follows: In October, 1877, the Central Vermont Railroad Company, having its principal office in St. Albans, Vermont, where the plaintiff in error also resided, was indebted to the firm of Hammond & Burt, residents of Franklin, in that State, in about the sum of $3600. It was the custom of that company to pay its debts of the character of this one in instalments, and at its own convenience. Hammond & Burt, having experienced considerable difficulty in collecting prior debts from the company, requested the plaintiff in error, as a matter of accommodation to them, to collect said indebtedness for them, and he consented to do so. In pursuance of this arrangement they called at his office on the 2d of October, 1877, he at the time being out, and left for him an order of which the following is a copy :

"St. Albans, Vt., Oct. 2, 1877.

" Central Vermont Railroad will please pay to S. C. Noble or order the whole amount due to us.

"Hammond & Burt."

Immediately after they had left his office the plaintiff in error came in, and, the order being handed to him, he stepped to the door of the office, called to them as they were crossing the street on their way to the depot, and asked them what he should do with the money when collected. They testified that they then told him " to keep the money until they called for it." He testified that they told him " to keep and use the money until they called for it," or words to that effect.

On this order the plaintiff in error collected $1000 from the railroad company — $500 on October 3 and $500 on October 12, 1877 — and deposited these sums as collected in bank, to his own credit, as he deposited his own funds. On the 26th of the same month he failed, and on the 6th of November, 1877, on the petition of his creditors, was adjudged a bankrupt. Subsequently, an offer of composition to his creditors was duly accepted and confirmed by a majority of them, but was not accepted by these plaintiffs.

It appears from the bill of exceptions that "there was no evidence tending to show any actual fraud or any fraudulent intent in the defendant's mingling the money with his own and using it." The jury returned a verdict for the defendants in error, under instructions from the court which authorized such a verdict only if the instructions given by the defendant in error to the plaintiff in error were to keep the money until they demanded it.

*Mr. Guy C. Noble,* (with whom was *Mr. A. P. Cross* and *Mr. E. Curtis Smith* on the brief,) for plaintiff in error, cited: *Chapman* v. *Forsyth,* 2 How. 202; *Neal* v. *Clark,* 95 U. S. 704; *Hennequin* v. *Clews,* 111 U. S. 676; *Hammond* v. *Noble,* 57 Vermont, 193; *Johnson* v. *Worden,* 47 Vermont, 457; *Darling* v. *Woodward,* 54 Vermont, 101; *Woolsey* v. *Cade,* 54 Alabama, 378; *McAdoo* v. *Lummis,* 43 Texas, 227; *Green* v. *Chilton,* 57 Mississippi, 598; *Upshur* v. *Briscoe,* 37 La. Ann. 138; *Henne-quin* v. *Clews,* 77 N. Y. 427; *Phillips* v. *Russell,* 42 Maine, 360; *Gibson* v. *Gorman,* 44 N. J. Law, 325; *Chipley* v. *Frier-son,* 18 Florida, 639; *Pierce* v. *Shippee,* 90 Illinois, 371; *Palmer* v. *Hussey,* 59 N. Y. 647; *S. C.* 87 N. Y. 303; *Stratford* v. *Jones,* 97 N. Y. 586; *Hayes* v. *Nash,* 129 Mass. 62; *Grover & Baker* v. *Clinton,* 8 Nat. Bank. Reg. 312; *Owsley* v. *Cobin,* 15 Nat. Bank. Reg. 489; *Wells* v. *Lamprey,* 16 Nat. Bank. Reg. 205; *In re Shafer,* 17 Nat. Bank. Reg. 116; *In re Rodger,* 18 Nat. Bank. Reg. 252; *In re Smith,* 18 Nat. Bank. Reg. 24.

*Mr. Henry R. Start,* for defendant in error, cited: *People* v. *Hennessey,* 15 Wend. 147; *Commonwealth* v. *Foster,* 107 Mass. 221; *Strang* v. *Bradner,* 114 U. S. 555; *Mackay* v. *Dillon,* 4 How. 421; *Hammond* v. *Noble,* 57 Vermont, 193.

MR. JUSTICE LAMAR delivered the opinion of the court.

The case presented upon the record, as found by the jury, is that of a produce dealer who, having been requested by parties to collect money for them as an accommodation, and without compensation, and to keep it until they called for it,

proceeded to make such collection, and, without actual fraud or fraudulent intent, deposited the proceeds to his own credit with his own funds; and who, before he paid it over was, by an unexpected revulsion, forced into bankruptcy, and made a composition with his creditors. The question involved is, whether the debt thus incurred was within the exception provided for in § 5117 Rev. Stat., which is as follows:

"No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy. . . ."

The judge on the trial charged the jury that the money under such circumstances was received in a fiduciary character, and that the plaintiffs must recover. The Supreme Court of Vermont affirmed the judgment of that court on the ground that, though the above charge was technically erroneous, it was harmless, because the act of the defendant, in mingling the money with his own and using it, was, in the face of the plaintiffs' instruction to keep it until they called for it, a wrongful and fraudulent act, a betrayal by the defendant of the trust reposed in him, and, therefore, a fraud which created a debt that was not discharged by the defendant's composition with his creditors under the provisions of the bankrupt law.

The effect to be given to the phrases "while acting in a fiduciary character" and "created by the fraud of the bankrupt," has been considered and fully settled by this court in the following cases: *Chapman* v. *Forsyth*, 2 How. 202; *Neal* v. *Clark*, 95 U. S. 704; *Wolf* v. *Stix*, 99 U. S. 1; *Hennequin* v. *Clews*, 111 U. S. 676; *Strang* v. *Bradner*, 114 U. S. 555; and *Palmer* v. *Hussey*, 119 U. S. 96. The class of debts held by the decisions in those cases to be excepted from the operation of bankrupt proceedings has been stated and illustrated with a clearness and fulness, which leaves but little opening for any controversy with regard to the application of the clause under consideration to particular cases.

Under the bankrupt act of 1841, which excepted from discharge debts of the bankrupt, created in consequence of a defalcation as a public officer, or as executor, administrator,

guardian, or trustee, or while acting in any other fiduciary capacity, this court, in *Chapman* v. *Forsyth*, held that the cases enumerated in the act are cases not of implied but special trusts; that the phrase, "in any other fiduciary capacity," referred, not to those trusts which the law implies from the contract, and which form an element in every agency, and in nearly all the commercial transactions in the country, but to technical trusts; and hence that a factor who had sold the property of his principal, and had failed to pay over to him the proceeds, did not owe to him a debt created in a fiduciary capacity within the meaning of the act.

That decision is stated by Mr. Justice Bradley, in the opinion in *Hennequin* v. *Clews*, to have been "not only followed but approved by the highest courts of several of the States."

Under § 5117, which is substantially a re-enactment of the provision of the act of 1841, in this regard, with the single additional provision that "no debt created by fraud shall be discharged," etc., this court, on the line of the same reasoning, has construed the word "fraud," as used in that section, to mean positive fraud, or fraud in fact — involving moral turpitude or intentional wrong, as does embezzlement, and not implied fraud or fraud in law; and hence it does not apply to a debt created by purchasing in good faith, from an executor, bonds belonging to his decedent's estate at a discount, although such an act was held to be a constructive fraud. *Neal* v. *Clark*, (*supra*). Nor does it include such fraud as the law implies from the purchase of property from a debtor with intent thereby to hinder and delay creditors in the collection of their debts. *Wolf* v. *Stix*, (*supra*). Nor does it refer to a debt arising from the conversion by a party to his own use of bonds held by him merely as a collateral security for the payment of a debt, or the performance of a duty, and which he fails to restore, after the payment of the debt or performance of the duty, to the person who entrusted them to his keeping. *Hennequin* v. *Clews*, (*supra*). In all these cases the defendant was held to be released by the subsequent discharge in bankruptcy.

The decisions of the state courts in a great number and

variety of cases, as shown by the citations in the brief of counsel for plaintiff in error, are in accord with the construction, by this court, of these clauses of the section in question, and have applied it to cases of agents, factors, commission merchants, and bailees, who have failed to account for proceeds of the sale of property committed to them for that purpose or moneys received upon collections entrusted to them.

The finding of the jury, that the agreement of the plaintiff in error was to collect the money and keep it until the defendants in error called for it, cannot be taken to imply an obligation to keep and deliver to them the identical bills or coins. Even if the agreement between the parties might be construed as creating a trust in some sense, it was clearly not such a trust as comes within the provisions of the bankrupt act. Nor can the subsequent mingling, by the plaintiff in error, of the money collected with his own, constitute the *actual, positive* fraud contemplated by that act, but only such an *implied* fraud as is involved in most, or all, cases of conversion of property or of breach of contract.

The judgment of the Supreme Court of Vermont is in conflict with the principles laid down by the decisions of this court, as well as the general drift of those of the several state courts, and is, therefore, reversed, and

*The case is remanded to the court below, with an instruction to grant a new trial and to take such further proceedings as may not be inconsistent with this opinion.*