HORNER *v.* NERLINGER.

1. BANKRUPTCY—DISCHARGE—EXCEPTION—BURDEN OF PROOF.

In law action on chancery decree rescinding contract for land sold plaintiff during period of mental incompetency, plaintiff had burden of establishing claim within exception of bankruptcy act not discharging debt, where defendant interposed discharge in bankruptcy (Bankruptcy Act, § 17).

2. SAME—CHANCERY DECREE—DISCHARGE—EXCEPTIONS.

A court could examine entire record of chancery case in determining whether decree rendered therein and now the basis of an action at law was within exception of bankruptcy act and not discharged by proceedings under such act (Bankruptcy Act, § 17).

3. SAME—JUDGMENT—RECORD—EXCEPTIONS.

A judgment is but an adjudication upon a record and plaintiff suing on judgment may not go back of the record to establish fact that his claim is within exception of bankruptcy act and not discharged by proceedings had thereunder (Bankruptcy Act, § 17).

4. SAME—FRAUD—BURDEN OF PROOF.

In order to show that claim based on fraud is within exception of bankruptcy act so as not to be discharged in proceedings

had thereunder, a plaintiff has burden of showing actual or intentional fraud, fraud implied in law being insufficient to defeat a discharge in bankruptcy (Bankruptcy Act, § 17).

5. VENDOR AND PURCHASER—LAND CONTRACT—LEGAL INCAPACITY OF PURCHASER—RESCISSION—FRAUD—BANKRUPTCY.

Fact that a plaintiff was legally incapacitated from purchasing land under a land contract does not establish actual and positive fraud on part of vendor and his agent and where chancery decree rescinded land contract because of legal incapacity it did not constitute a determination that vendor had committed fraud, hence the decree was dischargeable in bankruptcy (Bankruptcy Act, § 17).

6. BANKRUPTCY—DISCHARGE—EXCEPTIONS—FRAUD—WILFUL AND MALICIOUS INJURY—EVIDENCE.

In action at law on chancery decree, in which defendant interposed discharge in bankruptcy, where evidence did not show false pretenses or false representations on part of defendant within the intention of the bankruptcy act nor that defendant's liability was for wilful and malicious injuries to the person or property of plaintiff, the decree rescinding land contract because of plaintiff's then incapacity to contract was not saved from the operation of the discharge (Bankruptcy Act, § 17).

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 9, 1942. (Docket No. 80, Calendar No. 42,145.) Decided January 4, 1943.

Assumpsit by Herman F. Horner against Amil F. Nerlinger and another on a chancery judgment. Judgment for defendant Nerlinger. Plaintiff appeals. Affirmed.

*Edward N. Barnard,* for plaintiff.

*Fred Dye,* for defendant.

STARR, J. Plaintiff appeals from a judgment for defendant Nerlinger rendered by the trial court sitting without a jury.

On November 14, 1924, plaintiff was adjudged mentally incompetent by the probate court for Wayne county, and the Union Trust Company was appointed his guardian. Such guardianship continued until August 12, 1929, when plaintiff's disability was removed and the guardianship terminated by order of the probate court. In July, 1925, while plaintiff was under such disability and guardianship, defendant Nerlinger sold him, on land contract, two lots owned by Nerlinger at a price of $1,500, payable $150 down and the balance in monthly instalments of $15 or more with interest. The land contract described the lots as numbers "72 and 73 of the Seven Mile drive subdivision." Defendant Franck (also referred to as Frank), a real-estate salesman acting as Nerlinger's agent, showed such lots to plaintiff and made the sale. Nerlinger did not see or talk with plaintiff prior to the sale. Defendant Franck had knowledge of plaintiff's disability and guardianship when he made the sale to him.

Such lot purchase and land contract were not authorized by the probate court. Defendant Franck was informed by plaintiff's guardian that it "would have nothing to do with the purchase of any real estate." Plaintiff made payments on the land contract until some time in 1931, at which time he had paid a total of about $1,300 in principal and interest on the contract purchase price.

In October, 1931, plaintiff began a chancery action against defendants alleging, in substance, that, while under guardianship in 1925, he was induced to purchase such lots by the fraud and misrepresentations of defendants; that defendant Franck as agent for defendant Nerlinger "intentionally, wilfully, and maliciously for the sole purpose of defrauding and cheating" plaintiff showed him cer-

tain lots other and different from the lots described in the land contract; that defendant Franck showed him lots located "about two blocks off the Seven Mile road" and that the lots described in the land contract are located "between ½ and ¾ of a mile" from such road. Plaintiff alleged further that he first learned of defendants' fraud and misrepresentation in 1931; and that he then tendered the land contract back to defendant Nerlinger and demanded refund and repayment of all sums he had paid on the land contract. In his bill of complaint plaintiff asked that the land contract be rescinded and decreed null and void; that defendants be decreed to account for and repay to him all moneys paid on the contract; and "that an execution issue against the goods, chattels, lands, and tenements" of defendants.

Defendants Nerlinger and Franck both answered denying plaintiff's charges of fraud and misrepresentation and also denying that plaintiff had tendered back the land contract and demanded refund of payments. In his answer defendant Franck admitted that he knew plaintiff was under guardianship when the sale was made and the land contract executed. Such chancery case was tried in February, 1932. The court in its opinion stated, in part:

"The testimony is undisputed that at the time the contract was made, the plaintiff in this case, who purchased the property, was under guardianship. That being true, no legal contract could be entered into by him, nor an investment of this kind of his funds could be made, without an order from the probate court, procured by the guardian, and made by them on his behalf. * * *

"Mr. Nerlinger, the defendant in this case, claims to have held the property, and that is undisputed, by contract interest at the time the sale was made,

and Franck made the sale of the property, and he must be held to be agent of Nerlinger. &ast; &ast; &ast;

"The testimony to me is very convincing that at time this contract was made, *the plaintiff had no clear understanding of what he was purchasing.* I am also convinced that subsequent, and at the time of and after his guardian was discharged, *that he did not acquire, and has not yet acquired a thorough understanding of the property as shown to him, that he was purchasing.* I am inclined, and am forced to hold in this case, that ratification has not been made.

"The testimony is clear and undisputed that Mr. Franck, at the time the sale was made, had full knowledge of the facts that he was dealing with a man who had been charged with disability, and was unable to contract for himself, and I think his acts were very unbecoming and such as should be censured in his dealings with this guardian.

"A decree may be entered in this case in keeping with those remarks, in favor of the plaintiff, and charging both defendants in this case with the amounts of the payments which the plaintiff has made upon this property. &ast; &ast; &ast;

"Now then the decree may provide that the contract may be cancelled and rescission had, and that the defendants have 90 days in which to comply with the decree of this court. I have stated all that I will state in relation to that decree."

In pursuance of such opinion the court entered decree February 20, 1932, rescinding and canceling the land contract and ordering defendants, "individually and jointly," to pay plaintiff the sum of $1,675.74 within 90 days. The decree provided further that, if defendants defaulted in such payment, an execution issue against their "goods, chattels, lands and tenements."

The record shows that on December 13, 1935, plaintiff and defendant Nerlinger entered into a written stipulation whereby Nerlinger paid plaintiff

$150 and agreed to pay the "further sum of $50 on the 13th day of March, 1936, and a like amount quarterly thereafter until said (chancery) decree; taxed costs and interest have been fully paid and satisfied." It appears that Nerlinger made no further payments under such stipulation.

In May, 1939, plaintiff began the present law action against defendants Nerlinger and Franck, claiming that the sum of $2,150 and interest was due and owing to him under the above-mentioned chancery decree obtained against defendants in February, 1932, and that such chancery decree was "based upon fraud and misrepresentation." Default judgment in the present law action was later entered against defendant Franck for $2,275.41, and he has not appealed. On August 2, 1939, defendant Nerlinger answered admitting the entry of the chancery decree in February, 1932, but denying that such decree, as to himself, was based upon fraud and misrepresentation. In his answer, Nerlinger alleged that he had filed petition in bankruptcy and had been duly adjudged a bankrupt on October 7, 1937; that in such bankruptcy proceedings he had scheduled his indebtedness to plaintiff under the chancery decree against himself and defendant Franck; and that his discharge in bankruptcy, when granted, would bar and discharge plaintiff's claim against him. On March 15, 1940, defendant Nerlinger filed an amended answer setting forth that on September 25, 1939 (subsequent to the institution of the present law action), he was granted a discharge in bankruptcy and that plaintiff's claim was thereby discharged.

The present law case was tried before the trial court without a jury. The files in the former chancery case, including all pleadings, transcript of testimony, and the trial court's opinion and decree,

were introduced in evidence. Counsel stipulated as to the above-mentioned facts regarding defendant Nerlinger's petition, adjudication, and discharge in bankruptcy. The plat book from the tract index department, showing the location of the lots in question, was put in evidence. The only testimony in the present law case was plaintiff's statements regarding his above-mentioned written stipulation with defendant Nerlinger in December, 1935, and the payment of $150 by Nerlinger.

The trial court in the present law action, after consideration of the pleadings, transcript of testimony and decree in the chancery case, and the plat book showing the location of the lots, filed a written opinion stating, in part:

"Franck (defendant) has been defaulted, and judgment may be entered against him for the full amount.

"Nerlinger (defendant) pleads bankruptcy, and the plaintiff seeks to prevail against him upon the ground that the claim in this case comes within the exceptions set forth in section 17–A of the national bankruptcy act.    *    *    *

"It is my impression,    *    *    *    that this court, in passing upon the questions presented in the instant case, is called upon to examine the entire record to determine whether or not either of the exceptions to the bankruptcy law is present.    *    *    *

"It is my opinion that, considering the entire record, the plaintiff has failed to establish that the defendant, Nerlinger, obtained property by false pretenses or false representations, or that he committed a wilful and malicious injury to the property of Herman F. Horner.

"The claim of false pretenses or false representations rests primarily upon the charge that A. J. Franck (defendant), the agent who sold the two lots in question to Horner for Nerlinger (defendant), misrepresented their location, and actually pointed

out two lots to Horner different from the lots covered by the contract of sale to him. The contract of sale called for the sale from Nerlinger to Horner of lots 72, 73, of Seven Mile drive subdivision, city of Detroit, formerly Redford township. Plaintiff's chief claim is that it was represented to him that these two lots were about two blocks north of the Seven Mile road. Actually he claims these lots were about a half to three quarters of a mile from the Seven Mile road. Examination of the plat and adjoining plats shows that these two lots were about two and a half blocks north of the Seven Mile road, or a distance of 2,312 feet, which is 328 feet less than a half mile. It is, therefore, my view that plaintiff has failed to show that the defendant, Nerlinger, through the representations of Franck, his agent, was guilty of obtaining property by false pretenses or false representations. ⁕ ⁕ ⁕

"As I understand the contention of counsel for the plaintiff, it is in substance that for a person to sell property to a mental incompetent and take his money for the same when he knows that the mental incompetent is under guardianship, amounts in and of itself to wilful and malicious injury to the property of the mental incompetent. I cannot agree with that contention; and no authority has been found which supports it.

"It is elementary that a contract of that kind, of course, is voidable at the election of the mental incompetent. It is not absolutely void, and, in many cases, such contracts are made which, from their very nature, are beneficial to the incompetent. ⁕ ⁕ ⁕ But, to go farther and say that in every such instance the contractor has been guilty of wilful and malicious injury to the property of another, it seems to me distorts the plain language of the bankruptcy act, as construed in many decisions."

On July 8, 1941, the trial court entered judgment for defendant Nerlinger, and plaintiff appeals from such judgment. Plaintiff contends that his claim against Nerlinger under the chancery decree was

within the exceptions enumerated in the bankruptcy act, section 17 (11 USCA, § 35), and, therefore, was not barred by Nerlinger's discharge in bankruptcy. He also contends that the judgment was against the great weight of the evidence.

The above-cited section of the bankruptcy act provides, in part:

"Debts not affected by a discharge. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (first) are due as a tax levied by the United States, the State, county, district, or municipality in which he resides; (second) or liabilities for obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another."

Plaintiff's claim was a provable debt and, having been scheduled by defendant Nerlinger in his bankruptcy proceedings, would be barred by his discharge in bankruptcy unless included within the exceptions of the above-quoted statute. The burden is upon plaintiff to establish that his claim is within such exceptions. *Bonnici* v. *Kindsvater*, 275 Mich. 304; *Freedman* v. *Cooper*, 126 N. J. Law, 177 (17 Atl. [2d] 609); *New York Credit Men's Ass'n* v. *Miller*, 17 N. Y. Supp. (2d) 538; *In re Noble*, 42 Fed. Supp. 684; *Bingham* v. *Kendall*, 223 Ky. 661 (4 S. W. [2d] 681); Gilbert's Collier on Bankruptcy (4th Ed.), p. 378, § 565.

In determining whether or not plaintiff's claim under the chancery decree is within the exceptions of the statutes, the court may examine the entire record in the chancery case. *Rice* v. *Guider*, 275 Mich. 14; *Bonnici* v. *Kindsvater, supra; Nunn* v. *Drieborg*, 235 Mich. 383. In *Rice* v. *Guider, supra,* Mr. Justice WIEST said:

"Whether or not a judgment was obtained in an action for fraud is to be determined by an inspec-

tion of the entire record in the case in which the judgment was rendered. *Louisville & Nashville R. Co.* v. *Bryant,* 149 Ky. 359 (149 S. W. 830). * * *

"A judgment is but an adjudication upon a record. Plaintiff could go back of the judgment but not back of the record."

In *Bonnici* v. *Kindsvater, supra,.* Mr. Justice Sharpe stated, p. 308:

"In this cause the plaintiff has the burden of proving that her judgment is within the exception, and that the defendant's discharge is not operative as to it. Moreover, plaintiff must prove that the injury to her was wilful and malicious (*McIntyre* v. *Kavanaugh,* 242 U. S. 138 [37 Sup. Ct. 38, 61 L. Ed. 205]), and in determining whether a judgment is within the exception, the court may examine the entire record."

The trial court's opinion in the chancery case, hereinbefore quoted in part, clearly indicates that the decree granting plaintiff the relief prayed for was based upon his legal incapacity to contract, and not upon a finding of fraud and misrepresentation by defendants. We have examined the transcript of the testimony in the chancery case. Plaintiff testified, in part:

"*Q.* Mr. Horner, these lots Mr. Franck showed you that day were about a block off the Seven Mile road?

"*A.* About two blocks. * * *

"*Q.* And the two lots (described) in this land contract are how far from the Seven Mile road?

"*A.* Well, it is a half a mile from the Seven Mile road up to this avenue right here, the neighbors told me around there, so I judge it must be about, well, I don't know, you can judge that distance yourself."

Defendant Franck denied plaintiff's statements regarding misrepresentation in the sale and said

that the lots shown to plaintiff were the same lots described in the land contract. Defendants Nerlinger and Franck- both denied that plaintiff had tendered back his land contract and demanded refund of his payments. Defendant Franck testified further:

"*Q.* Mr. Franck, how far are lots 72 and 73 of the Seven Mile drive subdivision, which you claim are the lots you sold Mr. Horner, in blocks how far are they from the Seven Mile road?

"*A.* Past two blocks, a little over two blocks from the Seven Mile road. * * *

"*Q.* And are those lots between ½ and ¾ of a mile from the Seven Mile road?

"*A.* No, they are less than half a mile from Seven Mile road. *. * *

"*Q.* And the lots that you sold to Mr. Horner, then, agree with the description as set forth here (in land contract), as being approximately two blocks off Seven Mile road?

"*A.* A little over two blocks. You have to cross two streets before you get to the lots."

To summarize, plaintiff testified that the lots which defendant Franck showed him were about two blocks from the Seven Mile road, and Franck said the lots described in the land contract were "a little over two blocks" from such road. The trial court examined the plat book and apparently concluded that there was no material difference in the location of the lots shown to plaintiff and the lots described in the contract. The record shows that, prior to the transaction in question, plaintiff had purchased a lot in Wyandotte from or through defendant Franck. It also shows that plaintiff had previously purchased various other pieces of property on land contract. It is clear that he had had at least some experience in purchasing real estate

prior to his inspecting and purchasing the lots from defendant Nerlinger.

In considering the testimony regarding the location of the lots shown to plaintiff and the location of the lots described in the land contract, the trial court in the chancery case said:

"The testimony to me is very convincing that at the time this contract was made, the plaintiff had no clear understanding of what he was purchasing. I am also convinced that subsequent, and at the time of and after his guardian was discharged, that he did not acquire, and has not yet acquired a thorough understanding of the property as shown to him, that he was purchasing."

The trial court in the present law action, after examination of the plat book showing the location of the lots, stated in his opinion:

"Plaintiff's chief claim is that it was represented to him that these two lots were about two blocks north of the Seven Mile road. Actually he claims these lots were about a half to three quarters of a mile from the Seven Mile road. Examination of the plat and adjoining plats shows that these two lots were about two and a half blocks north of the Seven Mile road, or a distance of 2,312 feet, which is 328 feet less than a half mile. It is, therefore, my view that plaintiff has failed to show that the defendant, Nerlinger, through the representations of Franck, his agent, was guilty of obtaining property by false pretenses or false representations."

It would serve no useful purpose to quote or discuss further the conflicting and somewhat confusing testimony in the chancery case. The question before us is whether or not the testimony satisfactorily established that plaintiff's claim against defendant Nerlinger was within the exceptions of section 17 of the bankruptcy act and, therefore, was not barred by Nerlinger's discharge in bankruptcy.

In other words, did the testimony establish that plaintiff's claim was a liability of defendant Nerlinger for obtaining plaintiff's property "by false pretenses or false representations," or for "wilful and malicious injuries" to the person or property of plaintiff?

The law is well established that to bring his claim within the statutory exception of "liabilities for obtaining property by false pretenses or false representations," plaintiff must show actual or intentional fraud on the. part of defendant Nerlinger. The rule is stated in 8 C. J. S. p. 1516, § 573c, as follows:

"Actual or intentional fraud in obtaining property is necessary to save the liability from the operation of the discharge; fraud implied in law is insufficient.

"Not all frauds come within this exception to the operation of the discharge. * * *

"The character of the fraud necessary to save a claim from the operation of the discharge is an actual or positive fraud, knowingly and intentionally committed; fraud implied in law, or mere actionable or implied fraud which would support a judgment in a civil action without moral turpitude or intentional wrong, is not sufficient to defeat such discharge."

See, also, *Proctor* v. *Walker-Smith Co.* (Tex. Civ. App.), 87 S. W. (2d) 828; *Otto Gerdau Co.* v. *Radway,* 222 App. Div. 107 (225 N. Y. Supp. 284); *Hisey* v. *Lewis-Gale Hospital,* 27 Fed. Supp. 20 (40 Am. Bankr. Rep. [N. S.] 206); *Noble* v. *Hammond,* 129 U. S. 65 (9 Sup. Ct. 235, 32 L. Ed. 621); *Strang* v. *Bradner,* 114 U. S. 555 (5 Sup. Ct. 1038, 29 L. Ed. 248).

In the present case the mere fact of plaintiff's legal incapacity at the time he purchased the lots in question does not establish actual and positive

fraud on the part of Nerlinger. Because of plaintiff's incapacity the land contract for the purchase of such lots was voidable at plaintiff's election but was not necessarily void. The chancery decree was based upon plaintiff's incapacity to contract and not upon a determination of fraud and misrepresentation by defendants.

Our study of the conflicting testimony does not convince us that defendant Nerlinger's liability under the chancery decree was for obtaining plaintiff's property by false pretenses or false representations within the intention of the bankruptcy act. Furthermore, the testimony does not establish that defendant Nerlinger's liability was for wilful and malicious injuries to the person or property of plaintiff.

We are satisfied that the trial court in the chancery case reached the correct conclusion when he decreed rescission and cancellation of the land contract and a refund of plaintiff's payments on the ground of his incapacity to contract, rather than upon the ground of fraud and misrepresentation by defendants. We agree with the trial court in the present law action who said in his opinion, in part:

"It is my opinion that, considering the entire record, the plaintiff has failed to establish that the defendant, Nerlinger, obtained property by false pretenses or false representations, or that he committed a wilful and malicious injury to the property of Herman F. Horner (plaintiff)."

The authorities cited by plaintiff do not sustain his contention that his claim in the present law action was within the exceptions of the bankruptcy act and, therefore, not barred by defendant Nerlinger's discharge in bankruptcy. We conclude that plaintiff's claim does not come within the exceptions specified in the bankruptcy act. The judg-

ment for defendant Nerlinger was not against the great weight of the evidence.

The judgment is affirmed, with costs to defendant.

BOYLES, C. J., and CHANDLER, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.