MAIER *v.* MEYERS.

1. BANKRUPTCY—DISCHARGE—EXCEPTION—BURDEN OF PROOF.

   Judgment creditor claiming his judgment was not released by debtor's discharge in bankruptcy has burden of proving discharge was not operative as to such debt (Bankruptcy Act, § 17).

2. SAME—DISCHARGE—JUDGMENT—ACTUAL FRAUD.

   In making a determination as to whether or not a discharge in bankruptcy operated to release judgment against bankrupt, the court may examine the entire record supporting the judgment to ascertain whether it is within statute excepting liabilities for obtaining money or property by false pretenses from release by discharge (Bankruptcy Act, § 17).

3. SAME—FRAUD—BURDEN OF PROOF.

   In order to show that claim based on fraud is within exception of bankruptcy act so as not to be discharged in proceedings had thereunder, a plaintiff has burden of showing actual or intentional fraud, fraud implied in law being insufficient to defeat a discharge in bankruptcy (Bankruptcy Act, § 17).

4. SAME — FRAUD — EVIDENCE — JUDGMENT — DISCHARGE — STATUTE OF LIMITATIONS.

   Testimony in original case upon which judgment was given plaintiff justified conclusion that defendant therein had made false representations to plaintiff in order to secure an automobile from him and that the judgment, although a provable debt within the bankruptcy act, was not discharged in debtor's bankruptcy proceedings and could be sued upon within the period provided by the statute of limitations (Bankruptcy Act, §§ 11, 17, 63; 3 Comp. Laws 1929, § 13976, as last amended by Act No. 72, Pub. Acts 1941).

5. SAME—SUSPENSION OF STATUTES OF LIMITATIONS—DISCHARGE.

   No distinction is made in the bankruptcy act between provable debts which are dischargeable and those which are not dis-

chargeable by proceedings under the act so far as suspension of statutes of limitations is concerned (Bankruptcy Act, § 11 [f]).

6. JUDGMENT—ACTION TO REVIVE—SUSPENSION OF STATUTE OF LIMITATIONS—BANKRUPTCY.

Action to revive judgment, based on actual fraud of defendant, was timely commenced where although not brought within 10 years from date original judgment was granted, the statute of limitations was suspended as to all provable debts, including such judgment, before expiration of the 10-year period by voluntary bankruptcy proceedings and revival action was commenced during such suspension (Bankruptcy Act, § 11 [f]; 3 Comp. Laws 1929, § 13976, as last amended by Act No. 72, Pub. Acts 1941).

BUTZEL, C. J., and BUSHNELL, J., dissenting.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted January 11, 1946. (Docket No. 70, Calendar No. 43,245.) Decided May 13, 1946. Rehearing denied June 28, 1946.

Case by John Maier against William A. Meyers on a judgment. Judgment for plaintiff. Defendant appeals. Affirmed.

*Ford M. Yokom* (*Howard H. Campbell,* of counsel), for plaintiff.

*Louis Wechsler* and *Samuel H. Rubin,* for defendant.

SHARPE, J. This is an action to renew a judgment granted by the circuit court of Wayne county on November 9, 1932. The following facts have been stipulated. On October 21, 1942, William A. Meyers, defendant, filed a voluntary petition in bankruptcy and, under schedule A–3 as amended attached to the petition in bankruptcy, the claim involved in this cause appears among those claims of "creditors whose claims are unsecured." On Oc-

tober 22, 1942, defendant was adjudicated a bankrupt and on October 15, 1943, an order of discharge of said bankrupt was entered by the referee in bankruptcy. The discharge in bankruptcy provides:

"It is ordered that the said William A. Meyers be, and he hereby is, discharged from all debts and claims which are made provable by said act against his estate, except such debts as are, by said act, excepted from the operation of a discharge in bankruptcy."

On December 7, 1942, the present action for renewal and revival of the original judgment was commenced by plaintiff. Defendant in his answer to plaintiff's declaration as amended set up special defenses of the statute of limitations * and discharge in bankruptcy. On February 15, 1945, the trial court entered a judgment in favor of plaintiff in the amount of $5,209.58 with costs. On March 26, 1945, defendant filed a motion for a new trial, which was denied April 20, 1945. Defendant appeals.

The principal question in this case may be stated as follows: Was the judgment rendered against defendant in 1932 such a judgment as would make it nondischargeable under the bankruptcy laws? The answer to this question requires an examination of the facts upon which the 1932 judgment was based. The declaration and amendments thereto filed by plaintiff upon which the 1932 judgment was based alleges that prior to June 18, 1930, plaintiff was engaged in the automobile business in Ann Arbor, Michigan, where he bought and sold Auburn and Cord automobiles; that defendant, William A. Meyers, prior to and on June 18, 1930, was a dis-

---

* See 3 Comp. Laws 1929, § 13976, as amended by Acts Nos. 21, 193, Pub. Acts 1937, and Act No. 72, Pub. Acts 1941 (Comp. Laws Supp. 1940, 1945, § 13976, Stat. Ann. 1945 Cum. Supp. § 27.605).—
REPORTER.

tributor for the Auburn and Cord automobiles and controlled territory which included the city of Ann Arbor; that on said date plaintiff was the owner of a Cord sedan; that defendant represented to plaintiff that he (defendant) had been advised that the Auburn automobile company was about to place on the market a new model Cord sedan at a price reduced from that of the then-existing model; that defendant advised plaintiff to bring his Cord sedan from Ann Arbor to Detroit; and that on June 19, 1930, plaintiff took his Cord sedan to defendant's place of business in Detroit and delivered the same to defendant for which defendant gave plaintiff the following:

"Detroit, June 19, 1930.

"1 Cord Sedan, Serial #2,925,653, Motor #641. Received from John Maier the above car to be sold for Mr. J. Maier by the Meyers Auburn Co.

(signed) MEYERS AUBURN Co.

"H. A. PORTER, Mgr.        WM. A. MEYERS."

Plaintiff also alleged that defendant promised to sell such car and deliver to plaintiff the sale price thereof; that on or about July 2, 1930, defendant sold said car and received payment in full for the same; that upon learning of the sale, immediate demand was made on defendant for the money whereupon defendant informed plaintiff that the money had been used in defendant's business and represented that he (defendant) was well rated financially and enjoyed credit of $10,000 at his local bank and that the Ann Arbor bank would discount defendant's 30-day note for plaintiff; and that by reason of the false and fraudulent representations of said defendant, plaintiff was deceived into delivering said car to defendant and induced to accept from defendant a 30-day note for the price of the same.

The following is a copy of the note delivered and accepted:

"$2761                                   July 14, 1930.

"Thirty days after date I promise to pay to the order of John Maier, Two Thousand Seven Hundred Sixty-one Dollars. Payable at Ann Arbor Savings Bank. Value received with interest at 6% per annum.

"Due August 14th.     (Signed) WM. A. MEYERS."

In support of the above-amended declaration, plaintiff testified:

"On June 18th Mr. Meyers called me up. He phoned and asked me if I still got this car on the floor. I said yes, and he said, 'You better get rid of it.' I asked him why. He said, 'There is going to be a new model coming out pretty soon; the price is going to be dropped; the car is going to be ready to change; and you will have a big loss if you don't sell it as soon as you can.' And he said, 'Bring it down to me. I got a prospect for the car, and I can sell it for you.' * * *

"When I took the car down he figured out how much it was. It was $2,761 what he agreed to pay me for it. He said, 'It's all right. Leave it here.' * * *

"Q. Did you say anything to him about the acceptance of a note? Did you protest at all?

"A. I asked him if the note is any good.

"Q. What did he say about the note being good?

"A. He said, 'My God, man, I do business. I got around $30,000 tied up in my business here. Go over to my bank, ask how much credit I got. I got $10,000 worth of credit there.' * * *

"A. I said, 'Well, I'll take a note but that note ought to be good after 30 days.' And he said, 'Take that note and go right back to your bank after 30 days and get your money.' * * *

"A. * * * When I got this note I asked him,

'Is that note going to be any good after 30 days?' He said, 'Go over to Ann Arbor Savings Bank where you do business and get the money for it.' And that satisfied me. I took that note and went home, waited for 30 days."

It is the claim of plaintiff that the declaration in the original cause alleged false and fraudulent representations of existing facts by defendant to plaintiff by means of which plaintiff was induced to deliver his automobile to defendant and to accept the 30-day promissory note; that the original judgment of November 9, 1932, was in trespass on the case; and that the judgment so rendered is within the meaning of section 17 (a) (2) of the bankruptcy act (52 Stat. at L. 851, 11 USCA 1945 Cum. Ann. Supp. § 35 a [2]), which provides:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as  *   *   * (2) are liabilities for obtaining money or property by false pretenses or false representations."

In *Bonnici* v. *Kindsvater,* 275 Mich. 304, we said:

"In this cause the plaintiff has the burden of proving that her judgment is within the exception, and that the defendant's discharge (in bankruptcy) is not operative as to it. Moreover, plaintiff must prove that the injury to her was wilful and malicious (*McIntyre* v. *Kavanaugh,* 242 U. S. 138 [37 Sup. Ct. 38, 61 L. Ed. 205]), and in determining whether a judgment is within the exception, the court may examine the entire record. *Nunn* v. *Drieborg,* 235 Mich. 383."

In *Horner* v. *Nerlinger,* 304 Mich. 225, 237, we said:

"The law is well established that to bring his claim within the statutory exception of 'liabilities

for obtaining property by false pretenses or false representations,' plaintiff must show actual or intentional fraud on the part of defendant Nerlinger. The rule is stated in 8 C. J. S. p. 1516, § 573c, as follows:

" 'Actual or intentional fraud in obtaining property is necessary to save the liability from the operation of the discharge; fraud implied in law is insufficient.

" 'Not all frauds come within this exception to the operation of the discharge. * * *

" 'The character of the fraud necessary to save a claim from the operation of the discharge is an actual or positive fraud, knowingly and intentionally committed; fraud implied in law, or mere actionable or implied fraud which would support a judgment in a civil action without moral turpitude or intentional wrong, is not sufficient to defeat such discharge.'

"See, also, *Proctor* v. *Walker-Smith Co.* (Tex. Civ. App.), 87 S. W. (2d) 828; *Otto Gerdau Co.* v. *Radway,* 222 App. Div. 107 (225 N. Y. Supp. 284); *Hisey* v. *Lewis-Gale Hospital,* 27 Fed. Supp. 20 (40 Am. Bankr. Rep. [N. S.] 206); *Noble* v. *Hammond,* 129 U. S. 65 (9 Sup. Ct. 235, 32 L. Ed. 621); *Strang* v. *Bradner,* 114 U. S. 555 (5 Sup. Ct. 1038, 29 L. Ed. 248)."

The testimony of plaintiff in the original case justifies a conclusion that defendant made false representations to plaintiff in order to secure the automobile and in our opinion the judgment was not discharged in the bankruptcy proceedings. The 1932 judgment was a provable debt within the meaning of section 63a (1) of the bankruptcy act (52 Stat. at L. 873, 11 USCA 1945 Cum. Ann. Supp. § 103a [1]). It was not discharged in the bankruptcy proceedings and could be sued upon within the period provided by the statute of limitations. See *Elston* v. *Rusch,* 250 Mich. 221.

It is urged by plaintiff that as the judgment is a nondischargeable debt, the bankruptcy act suspends the running of the statute of limitations.

Section 11 (f) of the bankruptcy act (52 Stat. at L. 849, 11 USCA 1945 Cum. Ann. Supp. § 29 [f]) reads as follows:

"The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this act, shall be suspended during the period from the date of the filing of the petition in bankruptcy (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or (2) if he has waived or lost his right to a discharge, then until the expiration of thirty days after the filing of such waiver or loss of such right or, in case of a corporaton, if no application for a discharge is filed within the period of six months after the adjudication, then until the expiration of thirty days after the end of such period; or (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may first occur."

Section 63 of the bankruptcy act as last amended by 52 Stat. at L. 873 (11 USCA 1945 Cum. Ann. Supp. § 103) lists the kinds of debts which may be proved against the estate of the bankrupt; among them being:

"(a)  *  *  *  (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; (2) costs taxable against a bankrupt who was at the time of the filing of the petition by or against him plaintiff in a cause of action which would pass to the trustee and which trustee declines

to prosecute after notice; (3) a claim for taxable costs incurred in good faith by a creditor before the filing of the petition in an action to recover a provable debt; (4) an open account, or a contract express or implied; (5) provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgments.''

We have in mind that section 11 (f) makes no distinction between provable debts which are dischargeable and provable debts which are not dischargeable. It is urged by defendant that section 11 (f), *supra,* refers only to debts dischargeable in bankruptcy proceedings.

In 1 Collier on Bankruptcy (14th Ed.), pp. 1136, 1190, §§ 11.01, 11.14, it is said:

''Subdivision f, which tolls the statute of limitations to protect creditors, also represents a new departure from the content of the old section. This subdivision was incorporated to cure an unjust dilemma in which creditors of the bankrupt found themselves regarding statutes of limitations running against their claims during bankruptcy of the debtor.''

''This subdivision [f] is also a new addition to section 11, introduced by the 1938 act. Its purpose was to remedy the situation which prevailed under the former act whereby a creditor's claim could be barred by the running of a statute of limitations during the bankruptcy proceedings. Thus even though the bankrupt was not discharged and the creditor thereafter sought to pursue his claim through legal proceedings, the expiration of the statute was a good defense, whether or not the claim was dischargeable, inasmuch as the creditor could not assert that the bankruptcy proceedings had sus-

pended the running of the statute. This placed creditors in a difficult position, so that if they failed to institute a suit their claim might be barred by a statute of limitations and if they did sue and the bankrupt obtained his discharge in bankruptcy, their suits were of no value in so far as an *in personam* judgment was concerned.

"Subdivision f of section 11 now suspends all Federal and State statutes of limitations affecting provable debts from time of filing the petition in bankruptcy until whichever of the three specified situations first occurs."

In our opinion section 11 (f) of the bankruptcy act has the effect of suspending the statute of limitations on all provable debts of a bankrupt. Plaintiff's revival action commenced on December 7, 1942, was timely.

The judgment is affirmed, with costs to plaintiff.

Carr, Boyles, Reid, North, and Starr, JJ., concurred with Sharpe, J.

Butzel, C. J. (*dissenting*). I am not in accord with the construction placed on section 11 (f) of the bankruptcy act (52 Stat. at L. 849, 11 USCA 1945 Cum. Ann. Supp. § 29 [f]), as fully set forth in the opinion for affirmance. I believe this section refers only to provable debts *dischargeable* in bankruptcy. I agree that a nondischargeable debt is a provable one which the creditor has a right to prove in order to participate in any dividends declared. *Elston* v. *Rusch,* 250 Mich. 221.

Prior to the enactment of this section 11 (f), *supra,* in order to prevent a creditor's claim from becoming outlawed by the statute of limitations, it might become necessary to bring suit upon such claim. This would be an idle gesture and an expense if the debtor should receive a discharge from

the claim in the bankruptcy proceedings. Section 11 (f), *supra,* therefore provides that the statute of limitations be suspended until the expiration of 30 days after date of the entry of an order denying the discharge, or if the debtor had waived or lost his right to a discharge, then until the expiration of 30 days after the filing of such waiver or loss of such right; or in the case of a corporation, if no application for a discharge were filed within the period of six months after the adjudication, then until the expiration of 30 days after the end of such period, or until 30 days after the dismissal of bankruptcy proceedings, whichever may first occur. To me the plain meaning of these provisions is that the section is only intended to apply to a dischargeable debt. Otherwise, the claim could never become outlawed as there is no limitation in time as to an undischargeable debt.

In the instant case, there was no order entered denying the discharge, nor had the debtor waived or lost his right to discharge, nor were the bankruptcy proceedings ever dismissed. The time would never arrive when the claim would become outlawed. To adopt the theory advanced by plaintiff, we would have to read something into the statute. This we have no right to do. I believe the judgment became outlawed.

The case should be reversed and the case remanded to the lower court for the entry of judgment of no cause of action. Defendant should recover costs.

BUSHNELL, J., concurred with BUTZEL, C. J.