**In re Harold Robert WEIDMAN, Jr., Debtor.**

**Oran V. JARRELL, Plaintiff,**

**v.**

**Harold Robert WEIDMAN, Jr., Defendant.**

**Bankruptcy No. 80–02011. Adv. No. 81–0037–R.**

United States Bankruptcy Court, E. D. Virginia, Richmond Division.

March 9, 1982.

G. Clinton Moore, Richmond, Va., for plaintiff.

Robert E. Hyman, Goddin, Major, Schubert & Hyman, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a complaint by Oran V. Jarrell (Jarrell) styled as an objection to discharge pursuant to 11 U.S.C. § 523(a)(4). The complaint was tried as an objection to the dischargeability of a debt pursuant to § 523(a)(4) and this Court so treats it. After trial and upon the filing of briefs in this matter this Court makes the following determination.

## STATEMENT OF THE FACTS

Jarrell and Harold Robert Weidman, Jr. (Weidman), the Debtor herein, entered into an agreement on August 30, 1978 by which Jarrell authorized and appointed Weidman as his exclusive agent to secure a mortgage loan commitment to fund Virginia Pottery, a proposed business establishment in Doswell, Virginia. The agreement provided that Weidman would have an exclusive contract for a period of thirty days to obtain for Jarrell a loan in the amount of $6,000,-000.00 at an interest rate of no more than 10½% per annum for a period of fifteen years and for which commitment Jarrell would pay Weidman a fee of 1% of the loan.

Jarrell also deposited with Weidman an initial good faith deposit in the amount of $5,000.00 which Weidman would earn upon

issuance of a commitment for the loan. The parties agreed that the good faith deposit would be earned and retained for services rendered in obtaining the loan commitment and would be in addition to any other fee and charges which would be paid to Weidman or to Jarrell. Weidman agreed to return the deposit to Jarrell if he was unable to deliver a loan commitment.[1]

Jarrell deposited a good faith deposit in the amount of $5,000.00 with Weidman. Weidman deposited the funds in a personal checking account. In March, 1979 Weidman removed those funds from that account and commingled them with his own moneys although he had obtained no written loan commitment for Jarrell as required by the agreement. Weidman argued that he believed he had earned the $5,000.00 even though he had obtained no written financing commitment. He said that he had discussed the loan package with thirty-four lending institutions between August, 1978 and March, 1979 and that Jarrell had failed to live up to the bargain because he unilaterally changed the terms of the loan he thought was necessary for the Virginia Pottery project.

## CONCLUSIONS OF LAW

Jarrell objects to the dischargeability of the $5,000.00 good faith deposit arguing that the exclusive agency agreement and the deposit created a fiduciary relationship between Weidman and Jarrell and that Weidman committed a defalcation when he converted those funds to his own personal use. 11 U.S.C. § 523(a)(4) provides that "a discharge . . . does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."

The agreement which Jarrell and Weidman executed specifically authorized and appointed Weidman as Jarrell's exclusive agent to secure a mortgage loan commitment.[2]

The requirement that the debtor must be acting in a fiduciary capacity has been limited in this application to technical and express trusts. The law is well settled that this section does not apply to the frauds of agents. *In re Lilly*, 1 B.R. 773, 775 (Bkrtcy.D.Md.1980).

The terms of the agreement carried none of the indicia of a fiduciary relationship. The agreement in no way restricted Weidman's use of the $5,000.00 good faith deposit. The agreement did not call for segregation of the $5,000.00 deposit from Weidman's funds. *In re Falk of Bethlehem*, 3 B.R. 266, 271 (Bkrtcy.D.N.J.1980). Weidman had unrestricted use of the funds and could use the $5,000.00 in any manner he wished. *In re Wise*, 6 B.R. 867, 869 (Bkrtcy.M.D.Fla.1980). The agreement only required Weidman to return the $5,000.00 deposit in the event he was unable to obtain a firm commitment in writing from a lender. Finally, no Virginia statute requires that a good faith deposit of this nature be held in trust for the benefit of the depositor. *Carey Lumber Company v. Bell*, 615 F.2d 370, 375 (5th Cir. 1980).

11 U.S.C. § 523(a)(4) applies only to technical and express trusts and does not apply to fiduciary relationships which arise out of equitable or implied trusts. *Carey* at

1. Paragraph 14 of the agreement provides for an "INITIAL GOOD FAITH DEPOSIT AND PLACEMENT FEE: In consideration of H.R.W. negotiating this loan, the undersigned agrees to pay 1% as fee and hereby deposits the sum of $5000 the initial good faith deposit which shall be fully earned by H.R.W. and paid by Applicant upon issuance of a commitment for the loan as applied for herein, plus the balance of the placement fee, or as amended by mutual agreement. It is understood and agreed that said fee is earned and retained for service rendered in obtaining such commitment and shall be in addition to any other fee and charges which may be paid or payable to H.R.W. or the LENDER. If at the end of the EXCLUSIVE AGREEMENT TERM (condition 1, above) H.R.W. is unable to deliver the commitment specified, this deposit will be returned to the Applicant."

2. The agreement's preamble states ". . . [t]he Applicant hereby applies for a mortgage loan and authorizes and appoints H. Robert Weidman, Jr., hereafter referred to as H.R.W., as exclusive agent to secure a mortgage loan commitment, based on the following terms and conditions . . . ."

374. An act of wrongdoing is insufficient to create a trust because the wrongdoer must be a trustee before the wrong occurred. *Wise* at 870. " . . . [C]ases enumerated in the act are cases not of implied but special trusts; that the phrase, 'in any other fiduciary capacity,' referred, not to those trusts which law implies from the contract, and which form an element in every agency, and in nearly all the commercial transactions in the country, but to technical trusts . . . ." *Noble v. Hammond*, 129 U.S. 65, 69, 9 S.Ct. 235, 237, 32 L.Ed. 621 (1889).

Jarrell argues in his post-trial brief that the $5,000.00 good faith deposit should be nondischargeable in bankruptcy as a debt incurred by embezzlement. Embezzlement was not an issue at trial and no evidence of embezzlement was produced at trial. Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." 3 *Collier on Bankruptcy* ¶ 523.14(3) (1981). No evidence before the Court indicates that Weidman commingled the funds with his own moneys with a fraudulent intent.

An appropriate order will issue.