In re DeLOREAN MOTOR COMPANY, a Michigan Corporation, Debtor.

David W. ALLARD, Jr., as Trustee of DeLorean Motor Company, a Michigan corporation, Plaintiff,

v.

Ronald C. VINCI, a/k/a Ron Vinci, d/b/a Pacific Honda, Vinci Investment Co., Inc., a California corporation, Vinci Leasing, Inc., a California corporation, Roy S. Nesseth, Imogene Nesseth, Bernard W. Minsky, Hufstedler Miller Carlson & Beardsley, a California partnership, Ball, Hunt, Hart, Brown & Bearwitz, a California partnership, and Bank of America National Trust and Savings Association, a national bank, jointly and severally, Defendants.

Bankruptcy No. 82–06031–G.
Adv. No. 85–0486.

United States Bankruptcy Court, E.D. Michigan, S.D.

Oct. 11, 1988.

John G. Colucci, Ronald G. Longhofer, of Honigman Miller Schwartz & Cohn, Detroit, Mich., for plaintiff.

Michael S. Khoury, of Clark, Klein & Beaumont, Detroit, Mich., for defendants.

DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT VII AS AMENDED ON FEBRUARY 10, 1987 ONLY AS TO DEFENDANTS ROY S. NESSETH AND IMOGENE NESSETH.

RAY REYNOLDS GRAVES, Chief Judge.

This adversary proceeding is before the court on the trustee's motion for summary judgment against Roy S. Nesseth and Imogene Nesseth ("Nesseths") under Bankruptcy Rule 7056 and Fed.R.Civ.P. 56. The trustee's motion relates only to count VII as amended, a claim for conversion of proceeds derived from a sale of fifty-two vehicles and a claim for treble damages under M.C.L.A. 600.2919a. After consideration of the pleadings and other documents filed in the adversary proceeding, all appropriate affidavits and accompanying attachments submitted both in support of and in opposition to the motion, as well as answers to interrogatories filed by Roy S. and Imogene Nesseth, briefs, and arguments of counsel at hearing, the court denies the trustee's motion.

Understanding the issues presented in this motion requires a detailed account of the procedural background leading to this motion. The trustee brought this eight count action in May 1985. He seeks to recover money he says the defendants improperly routed to several California law firms that represented John Z. DeLorean in non-bankruptcy proceedings. On the theory that Roy and Imogene Nesseth aided and abetted or conspired with John Z. DeLorean to disburse funds to Bernard Minsky and other California law firms, funds that DMC should have received as payment for fifty-two DeLorean vehicles delivered to Capitol Cadillac Corp., the trustee alleges that Roy and Imogene Nesseth converted and diverted $832,000. See Trustee's Complaint (Docket #1). The trustee also argues, on brief, that the Nesseths aided Capitol Cadillac Corp. ("Capitol Cadillac") in converting the fifty-two DeLorean vehicles by procuring Manufacturer's Certificates of Origin ("MCO's") for the vehicles,

delivering them to Capitol Cadillac, and knowingly concealing the conversion of the vehicles. See Docket #114 and #133.

Court records indicate that the trustee first served a request for answers to interrogatories to Roy Nesseth on March 7, 1988. The court finds no record of the trustee's having deposed either Roy or Imogene Nesseth. Court records further show that on May 11, 1988 this court sent notice to counsel for the trustee and to defendant Bernard Minsky of pre-trial procedures and a September 26, 1988 trial date. On July 28, 1988, the trustee filed this motion for summary judgment against the Nesseths and Bernard Minsky. At the same time, the trustee filed a motion for default judgment against Roy Nesseth for failure to answer the March interrogatories. On August 8, 1988, after counsel for the trustee realized that the Nesseths had not received notice of the pre-trial procedures and September trial date, the court notified the Nesseths.

Counsel for the Nesseths entered his appearance on August 16 and on August 19 filed briefs in opposition to the trustee's summary judgment motion, in response to the trustee's motion for a default judgment, the Nesseths' first request to the trustee for answers to interrogatories, the Nesseths' amended answer to the complaint and request for a jury trial, and a motion to extend discovery and adjourn the trial date. In response, trustee's counsel requested and received this court's order permitting him to file a longer than normal reply brief to the Nesseths' summary judgment response.

The court heard oral arguments on the summary judgment motion on September 9, 1988. Counsel for the trustee contended, first, that the court should strike as untimely the respondents' supplemental brief and Roy Nesseth's affidavit that were filed several hours before the hearing. In opposition, the Nesseths' counsel argued that the court should consider Roy Nesseth's affidavit, notarized just one day earlier in the State of Utah, and the supplemental brief. Counsel for the Nesseths explained that he had entered the case only

three weeks earlier, his clients believing until early August that the trustee had abandoned the 1985 adversary proceeding against them. He submitted, moreover, that Roy Nesseth's affidavit raised material issues of fact and that the supplemental brief pointed out factual disputes apparent from examination of documents already filed in the case.

It is within the court's discretion whether to consider affidavits and documents submitted beyond a stated deadline. *Hooks v. Hooks,* 771 F.2d 935, 946 (6th Cir.1985); *Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24, 29–30 (1st Cir.1980). Federal Rule of Civil Procedure 56(c) says that a party opposing a summary judgment motion may serve opposing affidavits "prior to the day of the hearing." It does not say that the court cannot or should not permit adverse parties to the motion additional time to present affidavits. Although Local Rule 17(g), promulgated for use in the Eastern District of Michigan, requires that a respondent opposing a motion file a brief and supporting documents "as are then available" within ten days after service of a motion, it is apparent to this court that drafters of the local rules did not intend to restrict the rights of an adverse party to a summary judgment motion. Clearly, the local rule contemplates late filings in appropriate circumstances.

This court finds that the Nesseths' counsel offered a reasonable explanation for the untimely filings and will consider the supplemental brief and Nesseth's affidavit. In ruling on a summary judgment motion, the court must determine whether genuine issues of material fact exist. In the process, the court is obligated to consider the entire case record in deciding the motion. The trustee's familiarity with the underlying issues in this adversary precludes a finding that use of the defendant's affidavit unduly prejudices the trustee. *Edwards v. Whirlpool Corp. Aviation Dept.,* 678 F.Supp. 1284, 1287 (W.D.Mich.1987). Furthermore, although the court does not encourage or condone untimely filings, there is a significant difference between accepting the affidavit of an adverse party to the motion and in taking evidence in support of the motion

at the last minute when the opponent has no opportunity to rebut it. *Chan Wing Cheung v. Hamilton,* 298 F.2d 459, 460 (1st Cir.1962). Cf. *Jones v. Menard,* 559 F.2d 1282, 1285 (5th Cir.1977).

The trustee argues that there is no genuine issue as to any material fact that precludes this court from granting his motion for summary judgment. He argues, moreover, that as a matter of California law he has established a claim for conversion against the Nesseths and is, therefore, entitled to summary judgment on Count VII of his complaint. However, the trustee submits that Michigan law entitles him to treble damages.

The trustee supports his motion with two affidavits and attachments, and portions of two depositions. See Exhibits # 1–# 4 (Docket # 187). In addition, the trustee refers on brief to a deposition taken of another defendant during this adversary proceeding but not filed with the court or submitted in support of his summary judgment motion. Finally, the trustee directs the court's attention to the transcript of a summary judgment hearing in a separate adversary proceeding brought in the DeLorean case and to this court's published opinion in *In the Matter of DeLorean Motor Company,* 39 B.R. 157 (Bankr.E.D.Mich. 1984), *aff'd,* 59 B.R. 329 (E.D.Mich.1986).

■ The Nesseths object to the trustee's using these documents and decisions this court has made in other proceedings to support his summary judgment motion. First, they object to consideration of Exhibit # 1, an affidavit filed in another adversary brought by the trustee in the DeLorean bankruptcy case, an action that did not involve the Nesseths. However, this court finds no requirement in Federal Rule of Civil Procedure 56(e) or case law that affidavits be made specifically as support for the motion before the court. Neither does the rule require that an affidavit must be made in connection with the case at bar. Rather, an affidavit may be used if made on personal knowledge, if it shows affirmatively that the affiant is competent to testify to the subject matter, and to the extent

it sets forth facts that would be admissible in evidence. Therefore, this court concludes that it must consider the affidavit submitted as Exhibit # 1. However, under Rule 56(e), the court may not and will not consider the unsworn and uncertified copies of documents attached to the affidavit.

Next, the Nesseths object to consideration of the transcript of *Allard v. Capitol Cadillac Corporation,* Adv.Pro. No. 87–0193. Similarly, they object to use of findings made in *In the Matter of DeLorean Motor Co. supra.* It is settled that the court may take judicial notice of other cases that involve the same subject matter or present issues of a related nature between the same parties. 10A *C. Wright, A. Miller & M. Kane,* Federal Practice and Procedure Civil 2d sec. 2723 (1983). However, this court declines to take judicial notice of factual findings made in cases not involving the Nesseths.

In addition, the Nesseths object to use of Exhibit # 2, the affidavit of an accountant for the unsecured creditors' committee in the DeLorean bankruptcy case. To the extent that this affidavit presents facts within the affiant's personal knowledge and competency, the court will consider it. However, the trustee attaches to the affidavit numerous unsworn and uncertified documents of questionable admissibility, none of which will be considered.

Portions of two depositions, one taken in connection with the *Allard v. Capitol Cadillac Corp.* adversary and one taken of defendant Bernard Minsky prior to the filing of this adversary also will be considered. See Exhibits # 3 and # 4. Not properly submitted as "depositions" because they are not on file in this case or were taken when the Nesseths had no notice or reason to attend, these depositions are nevertheless properly submitted as if they were "affidavits." *Hoover v. Switlik Parachute Co.,* 663 F.2d 964, 967 (9th Cir. 1981). As the *Hoover* court explained, depositions are sworn statements based on personal knowledge. Therefore, to the extent the depositions present facts admissible as evidence and otherwise qualify as affidavits under Rule 56(e), the court will consider them.

The reasoning which permits acceptance of depositions submitted as Exhibits # 3 and # 4 cannot be extended to allow the court to consider the segments of Ron Vinci's deposition that counsel for the trustee and counsel for the Nesseths quote on brief. The court will not consider depositions or other documents that are not made a part of the court's record.

■ In deciding a summary judgment motion, the court disregards unsupported assertions made on brief, statements in affidavits that represent mere conclusions, as well as assertions made upon information and belief. *Bsharah v. Eltra Corp.,* 394 F.2d 502, 503 (6th Cir.1968). Further, the court scrutinizes the papers supporting the movant closely while treating the opponent's indulgently. *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). In other words, in accordance with the settled policy of the Sixth Circuit, the court construes the evidence in its most favorable light in favor of the party opposing the motion and against the movant. *Id.* at 427.

Summary judgment is an appropriate means of disposing of a case where there is no genuine issue as to any material fact, and applicable law entitles the moving party to prevail. Fed.R.Civ.P. 56(c). However, the moving party must show conclusively that no genuine issue exists as to any material fact. *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. denied,* 444 U.S. 986, 100 S. 495, 62 L.Ed.2d 415 (1979); Fed.R.Civ.P. 56. Rule 56(c) also requires the court to review the entire record before deciding whether to render a decision on the merits. *Id.* at 64. Therefore, even if the Nesseths had made no response to the trustee's motion, the court could not grant summary judgment without first examining all the materials properly before it under Rule 56(c) in the light most favorable to the Respondent. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 160, 90 S.Ct. 1598, 1608, 1609–10, 26 L.Ed.2d 142 (1970); Advisory Committee Note on 1963 Amendment to subdivision (e) of Rule 56.

■ When the moving party establishes the absence of a material and triable issue of fact, the burden moves to the opposing

party to present significant probative evidence tending to support his claim or defense. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). The court must measure the opposing party's argument by the underlying theory of the claim and defense being considered. In the case at bar, the trustee claims the Nesseths converted funds and conspired to conceal the conversion of fifty-two vehicles.

The trustee must show that no material and triable issue of fact exists as to his claims that Roy and Imogene Nesseth converted funds and knowingly concealed the conversion of DeLorean vehicles. In deciding whether the trustee has met his burden on the conversion claim it is necessary to review the requirements of conversion.

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his title or rights therein, ... without the owner's consent and without lawful justification." *Moore v. Regents of University of California*, 202 Cal.App.3d 1230, 249 Cal.Rptr. 494, 503 (1988). Further, it is "an act of wilful interference with a chattel, done without lawful justification, by which any person entitled thereto, is deprived of use and possession." *DeVries v. Brumback*, 53 Cal.2d 643, 647, 2 Cal.Rptr. 764, 349 P.2d 532 (1960). In order to prevail on a summary judgment motion, the trustee must show, first, DMC's ownership or right to possess the property at the time of the conversion. Then, he must show that the Nesseths converted the property by a wrongful act or disposition of DMC's property rights. Finally, he must show damages. Since the basis for the action is an unwarranted interference with DMC's dominion or control over its property, the trustee need not show that the Nesseths acted in bad faith or generally speaking, even intentionally. See *Moore*, 249 Cal. Rptr. at 503.

Certain facts are not disputed. Roy S. Nesseth was an employee and officer of DeLorean Motor Company before it filed for protection under chapter 11 of the Bankruptcy Code in October 1982. In addition, he has been a close business and personal friend of John Z. DeLorean for several years. Imogene Nesseth is Roy Nesseth's wife.

The parties acknowledge a transfer of $832,000 from National Bank of Detroit to Bank of America in San Diego, California and from there to the Bank of America in Huntington Harbor, California on November 10, 1982. Roy Nesseth admits asking his wife to pick up an $830,000 check payable to Bernard Minsky for delivery to Minsky and states that she did as he asked. See Affidavit of Roy Nesseth par. 8 (Docket #220). Imogene Nesseth received $2,000 from the Bank of America transaction. See Amended Answer par. 65 (Docket #204).

The parties also agree that DeLorean Motor Company ("DMC") received wire transfers of $300,000 in June 1982 and $320,000 in August 1982 in exchange for delivery of Manufacturer's Certificates of Origin ("MCO's") for DeLorean vehicles to Pacific Honda, a California dealership. See Complaint par. 16, par. 18, Nesseths' Reply Brief p. 2, and Trustee's Motion for Summary Judgment, Exhibit #1 (Docket #1, #187, and #201). It is also undisputed that Pacific Honda never took possession of the vehicles for which the Certificates of Origin were issued and that Pacific Honda received payments related to the June and August 1982 transfers.

However, Roy Nesseth does dispute the statement of Pacific Honda's general manager that he delivered seventy MCO's to Roy Nesseth for return to DMC. See Trustee's Motion, Exhibit #1, par. 6. Rather, Nesseth says that Pacific Honda delivered the MCO's to John Z. DeLorean. See Nesseth Affidavit par. 4. (Docket #220).

The parties dispute both the intent of DMC and Pacific Honda in June and August 1982 when they exchanged MCO's for wire transfers and the factual and legal circumstances surrounding the subsequent repayment to Pacific Honda and return of the MCO's. Honda's general manager states that DMC delivered the seventy MCO's as "collateral" with the agreement that DMC would issue invoices and deliver the seventy vehicles if Pacific Honda did not receive payment "within an agreed pe-

riod of time." See Trustee's Motion for Summary Judgment, Exhibit # 1, par. 2–5. Roy Nesseth, on the other hand, says that DMC sold but reserved a right to repurchase the seventy vehicles for which DMC delivered MCO's to Pacific Honda. He says DMC segregated the vehicles in New Jersey and noted Pacific Honda's ownership in the DMC records. Roy Nesseth further states that John Z. DeLorean borrowed the money to purchase Pacific Honda's interest in the seventy vehicles, using his personal assets as collateral for the loans and using new funds not co-mingled with DMC funds to pay for the vehicles. Neither affiant submits documents containing the agreement of DMC, Pacific Honda, and John DeLorean.

Pacific Honda's general manager says, on information and belief, that Roy Nesseth directed the ultimate disbursement of the funds that were wired to Pacific Honda's account in California. The court is unable to consider assertions made on information and belief rather than personal knowledge. In addition, the court has before it Roy Nesseth's denial as to having participated in the sale of the fifty-two DeLorean vehicles to Capitol Cadillac, in wiring funds to the Bank of America in California, or in disbursing the funds. Rather, he says that John DeLorean and his attorneys, DMC's bankruptcy attorney, and Capitol Cadillac arranged the $830,000 transfer to Bernard Minsky, counsel for John Z. DeLorean, and the $2,000 transfer to Imogene Nesseth. See Nesseth Affidavit par. 6 and 7.

The court finds no admissible evidence in the record for the trustee's allegation that DMC owned or had a right to the use or possession of the $832,000 that was transferred from Detroit to California. Neither can the court find, on the basis of the record or the documents presented in support of his summary judgment motion that the trustee has shown that either Roy or Imogene Nesseth "engineered" the sale of DeLorean vehicles to Capitol Cadillac Corp. Finally, the court cannot find that Roy Nesseth disbursed or directed the disbursement of the $832,000 to Bernard Minsky.

Furthermore, the court cannot find, on the evidence submitted, that Roy Nesseth participated in, knew about, or concealed the delivery of Manufacturer's Certificates of Origin to National Bank of Detroit just prior to the transfer of $832,000 to California. To the contrary, the deposition testimony of the National Bank of Detroit's representative indicates merely that "a person who *identified* himself as Roy Nesseth" called to discuss obtaining proceeds of a sale of DeLorean vehicles the bank had agreed to finance for Capitol Cadillac. In addition, the bank's representative stated that *someone* from a law firm representing DMC delivered "executed" MCO's to him, asked for a receipt, and asked how he would disburse the funds. Neither statement constitutes admissible evidence that supports the trustee's motion for summary judgment.

Because neither the record nor the documents submitted in support of the trustee's motion establish the absence of a genuine issue of material fact as to the responsibility of the Nesseths for the transfer of property shown to belong to DMC, the court must find that the trustee has not met the initial burden required by Federal Rule of Procedure 56 and must deny the motion for summary judgment.

IT IS SO ORDERED.