In re Howard K. PARTON, Debtor.

The HUNTINGTON NATIONAL BANK, Plaintiff,

v.

Howard K. PARTON, Defendant.

Bankruptcy No. 2–90–07804.
Adv. No. 2–91–0080.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Dec. 2, 1991.

Howard K. Parton, Pickerington, Ohio, for debtor, defendant.

Michael J. Barren, Porter, Wright, Morris & Arthur, Columbus, Ohio, for plaintiff.

Geoffrey E. Albrecht, Columbus, Ohio, for defendant.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio.

## OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

Huntington National Bank ("Huntington") commenced this action for non-dischargeability of a debt allegedly owed it by the debtor, Howard K. Parton ("Debtor"), the defendant in this adversary proceeding. Huntington now seeks summary judgment on its complaint. The Debtor has not responded to either the original or supplemental motion for summary judgment filed by Huntington, but has answered Huntington's request for admissions.

### II. *Factual Background*

On or about September 15, 1988, Huntington entered into an Operating Agreement ("Agreement") with Parton Leasing, Ltd., a sole proprietorship operated by the Debtor, whereby Parton Leasing, Ltd. arranged leases of motor vehicles while Huntington provided the related financial services. On April 11, 1989, the Debtor incorporated Parton Leasing, Ltd. which became Parton Leasing Ltd., Inc. ("PLLI"). It is unclear when Huntington became aware that the Debtor's business had been incorporated.

The debt at issue arises from a lease entered into between Huntington, as lessor, and Edward Novak, as lessee, for the lease of a 1990 Ford van. PLLI arranged the lease pursuant to the Agreement. PLLI executed and delivered to Huntington a

Vehicle Title Pledge Agreement ("Pledge") under which it agreed to deliver title to the van to Huntington by October 15, 1990. The Pledge also provided that the failure by PLLI to deliver the title or return the lease proceeds by October 15 would constitute a default under the agreement. Huntington performed its obligations under the Agreement, which included the payment to PLLI of a sight draft in the amount of $17,754.52. The van was delivered to Novak, but PLLI failed to pay the seller of the van, Van Land, Incorporated ("Van Land"). As a result, the van was never titled or registered in Huntington's name. Huntington eventually was required to return the van to Van Land due to PLLI's failure to pay for the vehicle.

The Debtor has admitted the following facts pursuant to Huntington's request for admissions: 1) After the date of incorporation, PLLI continued to operate in the same manner as it had as a sole proprietorship; 2) PLLI failed to observe such corporate formalities as regular meetings, maintaining minutes of any such corporate meetings, or the issuance of corporate stock; 3) The intermingling of personal and corporate funds; 4) PLLI failed to cause the van to be registered in Huntington's name; 5) PLLI failed to return the amount of the sight draft to Huntington; 6) The Debtor and PLLI failed to use the sight draft to purchase the van.

### III. *Discussion*

#### A. *Jurisdictional Statement and Standards for Summary Judgment*

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court has authority to hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(I).

Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056, provides for a grant of summary judgment as follows:

(c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly-supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On the whole, these decisions [*Anderson, Celotex,* and *Matsushita*] reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact had tended to emasculate summary judgment as an effective procedural device.

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989).

■ The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions, and affidavits establish the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552; *Street,* 886 F.2d at 1479. The ultimate burden of demonstrating the existence of a genuine issue of material fact, however, lies with the non-moving party. *Id.* 477 U.S. at 324, 106 S.Ct. at 2553. *See also First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for*

*trial."* Fed.Rule Civ.Proc. 56(e) (emphasis added) ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citations and footnotes omitted). Any inferences to be drawn from the underlying facts contained in these materials must be considered in the light most favorable to the Debtor. *United States v. Diebold, Inc.* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Assoc., Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that [initial] burden.

*Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991). *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Kendall v. Hoover*, 751 F.2d 171, 173–74 (6th Cir.1984); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976). If the moving party fails to make the necessary showing under Rule 56, summary judgment is inappropriate even though no opposing material is presented. *Klausing v. Whirlpool Corp.*, 623 F.Supp. 156, 160 (S.D.Ohio 1985), *appeal dismissed*, 785 F.2d 309 (6th Cir.1986); *see also Allard v. Vinci (In re DeLorean Motor Co.)*, 91 B.R. 766, 769 (Bankr.E.D.Mich.1988). Hence, the Court must examine the motion in the light most favorable to the Debtor even though he has filed no opposition. *See Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

**B.** *Piercing the Corporate Veil*

■ Huntington acknowledges that in order to deny the Debtor a discharge as to this debt, it first must establish that the Debtor is personally liable for such debt. To do so, Huntington must show that factors exist to justify piercing of the corporate veil.

No precise test for disregarding the corporate fiction has been articulated by the courts, each case being regarded as "sui generis" and decidable on its own facts. Nonetheless, certain general principles have been recognized. As recently set forth in *Brunswick Corp. v. Waxman*, 459 F.Supp. 1222, 1229 (E.D.N.Y.1978), *aff'd* 599 F.2d 34 (2d Cir.1979), the corporate fiction should be disregarded when: (1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Boehringer v. Long (Matter of Long)*, 35 B.R. 949, 952 (Bankr.S.D.Ohio 1983) (quoting *Bucyrus–Erie Co. v. General Products*, 643 F.2d 413, 418 (6th Cir.1981)). Other factors, such as ignoring corporate formalities, undercapitalization, the existence of fraud, commingling of corporate and personal funds, diverting corporate funds for personal use, and merging the identities of the corporation and the director/owner, also are to be considered. *Boehringer*, 35 B.R. at 952. *See also Lumara Foods of America, Inc. v. Union Savings & Trust Co. (Matter of Lumara Foods of America, Inc.)*, 74 B.R. 95 (Bankr.N.D.Ohio 1985), *aff'd* 74 B.R. 104 (N.D.Ohio 1987).

The Debtor's admissions establish that: the Debtor is the president, sole officer, and sole shareholder of PLLI; the Debtor governs all or substantially all of the affairs of PLLI, including overseeing and supervising operations, entering into and performing contracts, making hiring decisions, and acting as its agent; PLLI failed to issue any corporate stock; the Debtor personally paid obligations of the corporation on one or more occasions and conversely, the corporation paid the personal obligations of the Debtor on one or more occasions; the Debtor used the assets of PLLI for his personal use on one or more occasions; and, the debtor furnished all of the

corporation's capital. It is evident that the corporation "has no separate mind, will, or existence of its own." *Bucyrus–Erie*, 643 F.2d at 418–19. These admissions justify piercing the corporate veil.

### C. *Dischargeability of the Debt*

#### 1. *11 U.S.C. § 523(a)(2)*

A debt is non-dischargeable if it was obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Huntington argues that it withheld demanding payment from the Debtor for the amount of the sight draft due to representations from the Debtor "evincing a present intention that he would pay for the van with the proceeds from the sale of another vehicle." Supplemental Motion, p. 10. According to Huntington, it relied upon these false representations. Huntington also contends that the Debtor intended to deceive it as PLLI paid out $96,000.00 to other creditors without paying Huntington.

Huntington does not contend that the original amount of the sight draft was procured through fraud. Rather, its argument rests on the premise that an old debt which is extended, renewed, or refinanced through fraud may also be rendered non-dischargeable. *John Deere Co. v. Gerlach (In re Gerlach)*, 897 F.2d 1048, 1050 (10th Cir.1990) (citing *Caspers v. Van Horne (Matter of Van Horne)*, 823 F.2d 1285, 1288–89 (8th Cir.1987)). Here, PLLI promised to pay the debt owed, was extended credit, then failed to repay the debt as promised.

The Sixth Circuit has held that the following elements must be proven to except a debt from discharge:

1) that the Debtor obtained the money through a material representation that at the time the Debtor knew was false or made with gross recklessness as to its truth;

2) that the Debtor intended to deceive the creditor; and,

3) that the creditor reasonably relied on the false representation and its reliance was the proximate cause of the loss.

*Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986); *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423 (7th Cir.1985); *First National Bank of Cincinnati v. Hagedorn (Matter of Hagedorn)*, 25 B.R. 666, 668 (Bankr.S.D. Ohio 1982); 3 *Collier on Bankruptcy*, 523.08(4) (15th ed. 1989).

▮▮ Any representation made by the debtor must have been made with "intent to deceive." *Phillips*, 804 F.2d at 934. *See also Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1167 (6th Cir.1985); *Carini v. Matera (In re Matera)*, 592 F.2d 378, 380 (7th Cir.1979) (per curiam); *Houtman v. Mann (In re Houtman)*, 568 F.2d 651, 655–56 (9th Cir.1978). Accepting the fact that the debtor rarely will admit openly of deceitful intent, all facts, including circumstantial evidence, may be relied upon to support such a finding. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985); *Fleet Consumer Discount Co. v. Liptak (In re Liptak)*, 89 B.R. 3 (Bankr. W.D.Pa.1988). Viewing the motion, its accompanying affidavit, and the admissions, the Court cannot conclude that the Debtor intended to deceive Huntington. On the contrary, the admissions indicate that the Debtor was "floating" money in an attempt to pay his debts and/or those of PLLI. The fact that he said he would pay Huntington, but instead paid other creditors, does not evidence fraudulent or deceitful intent; it just as easily could evidence a debtor besieged by debts far greater than his resources.

Huntington also must prove that it "reasonably relied" upon the Debtor's representations. Reasonable reliance " 'cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith.' The determination of reasonableness must be made by evaluating all the facts and circumstances of the case." *Phillips*, 804 F.2d at 933 (quoting *Martin*, 761 F.2d at 1166). In this case, Huntington simply has not met this standard.

Huntington's argument under § 523(a)(2)(A) is plagued with "unexplained gaps ... pertinent to material issues of

fact." *Adickes,* 398 U.S. at 157–60, 90 S.Ct. at 1608–09; *Smith v. Hudson,* 600 F.2d 60, 65 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Specifically, Huntington has failed to meet the statutory tests for the denial of discharge of the debt in question. Therefore, summary judgment in favor of Huntington under § 523(a)(2)(A) must be denied.

### 2. *11 U.S.C. § 523(a)(4)*

■ A debtor is not discharged from any debt for "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Huntington argues that the Debtor incurred the subject obligation through fraud or defalcation while acting in a fiduciary capacity. The term "fiduciary" applies only to express or technical trusts, and does not extend to implied trusts, which are trusts imposed on transactions by operation of law. *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 251 (6th Cir.1982) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). There is no evidence that the relationship between Huntington and the Debtor was a fiduciary relationship within the scope of § 523(a)(4) or that an "express" or "technical" trust was created by the Agreement.

■ Huntington refers to PLLI as an "agent" in its memorandum in support of the supplemental motion for summary judgment. Absent additional factors, § 523(a)(4) does not apply to the fraud of agents. *Noble v. Hammond,* 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621 (1889); *Angelle v. Reed (Matter of Angelle),* 610 F.2d 1335 (5th Cir.1980); *Devaney v. Dloogoff (Matter of Dloogoff),* 600 F.2d 166 (8th Cir. 1979); *Mullis v. Walker (Matter of Walker),* 7 B.R. 563 (Bankr.M.D.Ga.1980). There being no evidence that the Debtor committed fraud while acting in a fiduciary capacity, Huntington's claim under § 523(a)(4) must be denied.

### 3. *11 U.S.C. § 523(a)(6)*

■ Huntington argues that it was willfully and maliciously injured by the Debtor's conversion of the proceeds of the sight draft. Section 523(a)(6) excepts from discharge any debt, "for willful and malicious injury by the Debtor to another entity or to the Property of another entity." In order to fall within the purview of § 523(a)(6), the injury must have been willful *and* malicious. Willful has been defined as "deliberate or intentional;" a deliberate or intentional act is one which necessarily leads to injury. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862–5865, 6318. The Sixth Circuit has held that malicious "means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986). In the instant matter, there is no evidence that the Debtor acted with the requisite intent to harm.

■ Section 523(a)(6) relates to intentional torts such as conversion and not to contract actions. *Barbachano v. Allen,* 192 F.2d 836 (9th Cir.1951); *Cadillac Vending Co. v. Haynes (Matter of Haynes),* 19 B.R. 849 (Bankr.E.D.Mich. 1982). Huntington's action is premised on violations of duties expressed in the Agreement, the Pledge, and the course of dealing between the parties. These duties arise from a contractual relationship.

In short, there is no evidence that the Debtor caused injury to Huntington by willful and malicious acts. The Debtor's failure to pay for the van or to remit the money in question may have been willful, but there is no evidence of malice. On the contrary, his response to Admissions Nos. 25 and 26 indicates, admittedly without specificity, that he was "floating" money to pay debts. Hence, the record at this juncture does not support a finding of willfulness or maliciousness; thus, relief under § 523(a)(6) is denied.

### IV. *Conclusion*

Huntington's motion for summary judgment as to the piercing of PLLI's corporate veil is GRANTED. All other requests set forth in such motion are DENIED. This

proceeding is hereby set for trial on April 8, 1992 at 10:00 a.m. in Courtroom 126, United States Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215.

IT IS SO ORDERED.